UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

           v.                           Civil Action No.: 22-cv-1423

CONTAINER LIFE CYCLE MANAGEMENT,
LLC,

        Defendant.

## COMPLAINT

Plaintiff, the United States of America, by and through the Attorney General of the United States and through his undersigned attorneys, acting at the request and on the behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1.      The United States brings this civil action against Container Life Cycle Management, LLC ("CLCM") pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 et seq., the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 et seq., and their implementing permits and regulations, for alleged environmental violations at CLCM's three steel and plastic drum, and tote reconditioning facilities located in St. Francis, Oak Creek, and Milwaukee, Wisconsin ("Facility" or "Facilities"). The United States is seeking injunctive relief and the assessment of civil penalties for the alleged violations.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and Section

1

3008(a) of RCRA, 42 U.S.C. § 6928(a).

3.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), because the violations that constitute the basis of the Complaint occurred and are occurring in this district, and the Defendant conducts business in this district.

**Notices**

4.     The United States provided notice of the commencement of this action to the State of Wisconsin as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

5.     On November 27, 2017, EPA issued Defendant a CAA Notice and Finding of Violation ("NOV") for the Oak Creek and St. Francis facilities. EPA provided a copy of this Notice to the State of Wisconsin as required by Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1).

6.     More than thirty days have elapsed since EPA provided notice to Defendant pursuant to Section 113 of the CAA, 42 U.S.C. § 7413, of all violations of federally enforceable aspects of the Wisconsin CAA State Implementation Plan alleged herein.

7.     On November 27, 2017, EPA issued Defendant a NOV for RCRA violations at the Milwaukee, Oak Creek, and St. Francis facilities, and provided a copy of this Notice to the State of Wisconsin as required by Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

## AUTHORITY

8.     The United States Department of Justice has authority to bring this action on behalf of the Administrator of the EPA under 28 U.S.C. §§ 516 and 519, Section 305 of the CAA, 42 U.S.C. § 7605, and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

## DEFENDANT

9.     Defendant CLCM is a Delaware Limited Liability Company.

2

10. Defendant owns and operates a steel and plastic drum reconditioning processing facility at 3950 South Pennsylvania Avenue, St. Francis, Wisconsin ("St. Francis Facility"); and owns and operates a steel drum reconditioning processing facility at 8570 South Chicago Road, Oak Creek, Wisconsin ("Oak Creek Facility").

11. Until June 2020, Defendant owned and operated a 275-gallon plastic and metal tote reconditioning facility at 2300 W. Cornell Street, Milwaukee, Wisconsin ("Milwaukee Facility").

12. Defendant is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and applicable federal and state regulations promulgated pursuant to the CAA, and Section 1003(15) of RCRA, 42 U.S.C. § 6903(15).

13. The Oak Creek Facility, St. Francis Facility, and Milwaukee Facility are "facilities" within the meaning of 40 C.F.R. § 260.10 and Wis. Admin. Code § NR 400.02(63).

## STATUTORY BACKGROUND

## RESOURCE CONSERVATION AND RECOVERY ACT

14. RCRA, enacted in 1976, amended the Solid Waste Disposal Act of 1965. Subtitle C of RCRA, 42 U.S.C. §§ 6921 to 6939f, authorizes the "cradle-to-grave" regulation of hazardous waste. RCRA was amended in 1984 by the Hazardous and Solid Waste Amendments, Pub. L. 98-616, 98 Stat. 3221, which added additional requirements.

15. Pursuant to its authority under RCRA, EPA has promulgated regulations at 40 C.F.R. Parts 260 through 279, which generally prohibit the treatment, storage, or disposal of hazardous waste without a RCRA permit or equivalent "interim status."

16. The EPA Administrator may, if certain criteria are met, authorize a state to operate a "hazardous waste program" in lieu of the regulations comprising the federal hazardous waste

program when the Administrator deems the state program to be equivalent and consistent with the federal program. RCRA § 3006, 42 U.S.C. § 6926.

17.     Pursuant to this section, the Administrator granted the State of Wisconsin final authorization to implement its own hazardous waste management program in lieu of the federal government's base RCRA program, effective January 31, 1986. 51 Fed. Reg. 3,783 (Jan. 30, 1986). The Administrator granted final authorization to Wisconsin to administer additional RCRA requirements effective on later dates.

18.     The EPA-authorized Wisconsin hazardous waste regulations are incorporated by reference as part of the hazardous waste management program under Subtitle C of RCRA, 40 C.F.R. § 272.2501(c).

19.     Wisconsin manages its hazardous waste program pursuant to Wis. Stat. Ch. 291. Wisconsin's hazardous waste regulations are set forth in Wis. Admin. Code § NR 660 *et seq.*

20.     RCRA and its implementing regulations, including Wisconsin's hazardous waste regulations, provide detailed requirements governing the activities of persons who generate, transport, treat, store, or dispose of hazardous waste.

21.     As relevant to this Complaint, Wisconsin's hazardous waste statute and regulations require:

a.     Transportation, storage, treatment and disposal of hazardous waste only by licensed operators. *See* Wis. Stat. § 291.23, Wis. Stat. § 291.25;

b.     Notification of the generation and storage of hazardous waste pursuant to Wis. Admin. Code § NR 660.07;

c.     Determination whether any generated solid wastes are hazardous. *See* Wis. Admin. Code § NR 662.011;

4

d.      Record-keeping regarding hazardous waste determinations. *See* Wis. Admin. Code § NR 662.040(3).

22.      Wis. Admin. Code § NR 661.0002 defines a "solid waste" as any discarded material that is not excluded from that definition. A discarded material is any material that is abandoned, recycled, considered inherently waste like, or is a military munition identified as a solid waste in § NR 666.202.

23.      Wis. Admin. Code § NR 661.0002(2) defines a material as being abandoned if it is "disposed of, burned or incinerated, or accumulated, stored, or treated (but not recycled) before or in lieu of being disposed of, or burned or incinerated."

24.      Unless excluded from regulation, "solid wastes" can be hazardous wastes in two ways: "characteristic" hazardous wastes, and/or "listed" hazardous wastes. *See* Wis. Admin. Code § NR 661, subparts C and D.

25.      A material may be defined as a "characteristic" hazardous waste based upon its chemical or physical properties. Subchapter C of Wis. Admin. Code § NR 661 provides that a waste has a hazardous "characteristic" if it exhibits any of the characteristics of ignitability (designated as D001 wastes), corrosivity (D002 wastes), reactivity (D003 wastes), or toxicity (D004-043 wastes (toxicity is measured for 40 different contaminants present in materials)). *See* Wis. Admin. Code §§ NR 661.0020-661.0024.

26.      Wis. Admin. Code § NR 660.10(50) defines "generator" as any person, by site, whose act or process produces hazardous waste identified or listed in chapter NR 661 or whose act first causes a hazardous waste to become subject to regulation.

27.      Wis. Admin Code § NR 660.10(90) defines "person" as "an individual, trust, firm, joint stock company, limited liability company, federal agency, corporation (including a

5

government corporation), partnership, association, state municipality, commission, political subdivision of a state or any interstate body."

28.     Wis. Admin. Code § NR 662.011 requires a person who generates a solid waste to accurately determine whether that waste is a hazardous waste (a "hazardous waste determination").

29.     Wis. Admin. Code § NR 662.040(3) requires a generator to keep the records of any waste analyses or other determination made in accordance with Wis. Admin. Code § NR 662.011 (a "waste characterization") for at least three years from when that waste was last sent for treatment, storage, or disposal.

30.     A "hazardous waste facility" is any site or structure for the treatment, storage, or disposal of hazardous waste.  Wis. Stat. § 291.01(8).

### Regulation of Residual Wastes

31.     Under Wis. Admin. Code § NR 661.0007(2), a container or an inner liner removed from a container that has held any hazardous waste (except a waste that is a compressed gas or that is identified as an acute hazardous waste listed in sections NR 661.0031 or 661.0033(5)) is considered "empty" for purposes of RCRA regulation if all wastes have been removed that can be removed using the practices commonly employed to remove materials from that type of container, e.g., pouring, pumping and aspirating; and either (i) no more than 2.5 centimeters (one inch) of residue remains on the bottom of the container or inner liner; (ii) no more than 3% by weight of the total capacity of the container remains in the container or inner liner if the container is less than or equal to 119 gallons in size; or (iii) no more than 0.3% by weight of the total capacity of the container remains in the container or inner liner if the container is greater than 119 gallons in size.

32.     Under Wis. Admin. Code § NR 661.0007, any hazardous waste remaining in either a container or an inner liner removed from an empty container, which is "empty" as defined in  § 661.0007(2), is not subject to chapters NR 661-665, 667, 668, or 670, or § NR 660.07.

6

33.     Any hazardous waste in either a container that is not empty or an inner liner removed from a container that is not "empty," as defined in § NR 661.0007(2), is subject to chapters NR 661-665, 668, and 670, and § NR 660.07.

**Enforcement of RCRA**

34.     Section 3008(a)(1) of RCRA, 42 U.S.C. § 6928(a)(1), authorizes EPA to enforce the regulations of Wisconsin's authorized RCRA program and commence a civil action for injunctive relief and a civil penalty whenever EPA determines that a person is in violation of any RCRA hazardous waste requirement.

35.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461, note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996, and the Federal Civil Penalties Inflation Adjustment Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L. 114-74, Section 701), and 40 C.F.R. § 19.4, the Defendant is liable for civil penalties of up to up to $75,867 per day for each violation that occurred after November 2, 2015.

## CLEAN AIR ACT

### National Ambient Air Quality Standards

36.     The CAA requires the EPA Administrator to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for six "criteria" air pollutants—including particulate matter—for which air quality criteria have been issued pursuant to CAA §§ 108-109, 42 U.S.C. §§ 7408-09.

37.     An "air pollutant" means "any air pollution agent or combination of such agents, including any physical, chemical, biological, radioactive…substance or matter which is emitted into or otherwise enters the ambient air." This also includes any precursors to the formation of any air pollutant. CAA § 302(g), 42 U.S.C. § 7602(g).

7

38.     Relevant to this Complaint, volatile organic compounds ("VOCs"), are a precursor to ozone, one of the six designated criteria air pollutants.

39.     The CAA requires each state to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  CAA § 107(d), 42 U.S.C. §7407(d).  An area that meets the NAAQS for a particular pollutant is an "attainment" area.  An area that does not meet the NAAQS is a "nonattainment" area.

40.     At all times relevant to this Complaint, the areas of Milwaukee County, Wisconsin, where Defendant's Facilities are located, has been designated in attainment with the NAAQS for ozone.

**State Implementation Plans**

41.     Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a CAA State Implementation Plan ("SIP") that provides for the implementation, maintenance, and enforcement of the NAAQS.  Each SIP must include enforceable emission limitations.  CAA § 110(a)(2)(A), 42 U.S.C. § 7410(a)(2)(A).

42.     Once EPA approves a SIP, the SIP is also independently enforceable by the federal government under Section 113 of the CAA, 42 U.S.C. § 7413.

43.     Of relevance to this Complaint, Section 110(a)(2)(C) of the CAA, 42 U.S.C. § 7410(a)(2)(C), requires each SIP to include "regulation of the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that national ambient air quality standards are achieved, including a permit program. . . ."

44.     On January 18, 1995, EPA approved Wis. Admin. Code § NR 406 as part of the federally enforceable SIP for Wisconsin.  The approved provisions implemented the construction

8

permit program in the State of Wisconsin. 40 C.F.R. § 52.2570(c)(75), 60 Fed. Reg. 3,538 (Jan. 18, 1995).

45.     On January 18, 1995, EPA approved Wis. Admin. Code § NR 407 as part of the federally enforceable SIP for Wisconsin. The approved provisions implemented the operating permit program in the State of Wisconsin. 40 C.F.R. § 52.2570(c)(76), 60 Fed. Reg. 3,538 (Jan. 18, 1995).

46.     In 2008, EPA approved revisions to the Wisconsin SIP that provide various Wisconsin construction permit rules for stationary sources. 73 Fed. Reg. 12,893 (Mar. 11, 2008).

47.     The Wisconsin SIP provides that:

> [A]ny owner or operator who commences construction, reconstruction, replacement, relocation, or modification of a stationary source without applying for and receiving a permit as required under this chapter or NR 405 or 408 shall be considered in violation of Wis. Stat § 285.60.

Wis. Admin. Code § NR 406.10.

48.     On April 27, 1995, EPA approved Wis. Admin. Code § NR 424.03 as part of the Wisconsin SIP. 60 Fed. Reg. 20,643 (Apr. 27, 1995). The approved provision of the Wisconsin SIP requires that all process lines which emit organic compounds, solvents or mixtures on which construction or modification commenced on or after August 1, 1979, which are not subject to emission limitations listed elsewhere in Wis. Amin. Code chapters NR 419-423 shall:

> control volatile organic compound emissions by at least 85%, [or,] where 85% control . . . has been demonstrated to be technologically infeasible for a specific process line, . . . control organic compound emissions by use of the latest available control techniques and operating practices demonstrating best current technology. …

Wis. Admin. Code § NR 424.03(2)(b)-(c). The Wisconsin SIP defines a "process line" as: "one or more actions or unit operations which must function simultaneously or in sequence in order to manufacture or modify a product." Wis. Admin. Code § NR 400.02(128).

9

49.     Under the Wisconsin SIP, "air contaminant" means "dust, fumes, mist, liquid, smoke, or other particulate matter, vapor, gas, odorous substances or any combination thereof but shall not include uncombined water vapor."  Wis. Admin. Code § NR 400.02(12).

50.     A violation of federally enforceable SIP requirements, including construction permit requirements, is a violation of CAA Section 110, 42 U.S.C. § 7410, and is federally enforceable under CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1).

**Title V**

51.     CAA Title V, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources of air pollution, including "major sources."  The purpose of Title V is to ensure that all "applicable requirements" for compliance with the CAA, including SIP requirements, are collected in one permit.  42 U.S.C. § 7661c(a).

52.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32,250 (July 21, 1992).  EPA's regulations implementing CAA Title V are codified at 40 C.F.R. Part 70.  In Wisconsin, a source that is required to have a Title V permit is sometimes referred to as a "Part 70 Source."

53.     Under Title V, a "major source" is defined to include, among other things, a "major stationary source" as defined in 42 U.S.C. § 7602.  The term "major stationary source" is defined at 42 U.S.C. § 7602 to mean, in pertinent part, "any stationary facility or source of air pollutants which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant[.]"

54.     Under Title V, "potential to emit" is defined as:

10

"[t]he maximum capacity of a stationary source to emit any air pollutant under its physical and operational design. Any physical or operational limitation on the capacity of a source to emit an air pollutant, including air pollution control equipment and restrictions on hours of operation or on the type or amount of material combusted, stored, or processed, shall be treated as part of its design if the limitation is enforceable by the Administrator."

40 C.F.R. § 70.2.

55.     Section 503(c) of the CAA, 42 U.S.C. § 7661b(c), requires any person required to have a permit under Title V to timely submit an application for a permit. Similarly, 40 C.F.R. § 70.5(a) provides that an owner or operator shall submit a timely and complete permit application in accordance with Part 70 requirements.

56.     Pursuant to Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), and the implementing regulations at 40 C.F.R. § 70.7(b), after the effective date of any permit program approved or promulgated under Title V of the CAA, no person may operate a major source except in compliance with a Title V permit.

57.     Under the federal Title V program and regulations, any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application must, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information. 40 C.F.R. § 70.5(b).

58.     EPA granted final approval of Wisconsin's CAA Title V Permit Program, effective November 30, 2001. 66 Fed. Reg. 62,951 (Dec. 4, 2001); 40 C.F.R. Part 70, Appendix A. On February 28, 2006, EPA granted Wisconsin final approval on revisions to its CAA Title V Permit Program, effective March 30, 2006. 71 Fed. Reg. 9,934 (Feb. 28, 2006).

59.     The Wisconsin SIP provisions encompassing its CAA Title V Permit Program are found at Wis. Admin. Code Ch. NR 407, which specifies operating permit requirements for stationary sources of air contaminants.

60.     The permit application section of chapter NR 407 requires that the operating permit application contain, among other information:

> The maximum theoretical emissions of all air contaminants from all emissions units, operations, and activities except those exempted under [Wis. Admin. Code § NR 407.05(4)(c)(9) or (10)]. . . .

> Emission rates in tons per year and in terms necessary to demonstrate compliance with emission limitations consistent with the applicable reference test method.

Wis. Admin. Code § NR 407.05(4)(c)(1), (3).

61.     Any noncompliance with a Wisconsin operating permit issued pursuant to the SIP constitutes a violation of the Wisconsin SIP and is grounds for enforcement action; permit suspension; revocation or revision; or denial of a permit renewal application.  Wis. Admin. Code § NR 407.09(1)(f)(1).

62.     All terms and conditions of a Title V permit are federally enforceable.  42 U.S.C. § 7413(b); 40 C.F.R. § 70.6(b).

**Enforcement of the CAA**

63.     Sections 113(a)(1) and (a)(3) of the CAA, 42 U.S.C. §§ 7413(a)(1) and (a)(3), authorize EPA to bring a civil action under Section 113(b) if EPA finds that a person is in violation of any requirement or prohibition of Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder, or the Wisconsin SIP or any permit issued thereunder.

64.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the court to enjoin a violation, to require compliance, to assess and recover a civil penalty, and to award any other appropriate relief for each violation.

65.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101–410, Oct. 5, 1990, 104 Stat. 890, as amended, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the Defendant is liable for civil penalties of up to:  (i) $37,500

per day for each violation that occurred between January 13, 2009, and November 2, 2015, inclusive; and (ii) $101,439 per day for each violation that occurred after November 2, 2015.

## GENERAL ALLEGATIONS

66.     Defendant was the "owner or operator" of the Milwaukee, St. Francis, and Oak Creek Facilities at all times relevant to this Complaint and is the "owner or operator" of the St. Francis and Oak Creek Facilities, within the meaning of the CAA, RCRA, and applicable Wisconsin regulations.

67.     Defendant receives used industrial containers from its customers, which Defendant refurbishes at its Facilities and re-sells.

68.     When customers send used containers to Defendant for refurbishing that contain residual material, this material has been "discarded" by the customers within the meaning of Wis. Admin. Code § NR 661.0002(2).  Discarded residual material is a solid waste and may be a hazardous waste regulated under RCRA unless subject to an applicable exemption.

69.     Some of the used industrial containers that Defendant receives from its customers contain residual materials in excess of an amount that would qualify the container as "empty" as defined in Wis. Admin. Code § NR 661.0007.

70.     On occasion, Defendant receives containers with excess residual materials that are labeled "Hazardous Waste" that cannot be returned to the customer.

### Overview of Inspections

71.     EPA representatives conducted CAA and RCRA inspections at Defendant's St. Francis Facility on November 20, 2016, February 28, 2017 (RCRA only), May 4, 2017, and July 17, 2017; at the Oak Creek Facility on December 1, 2016, March 2, 2017 (RCRA only), and May 4, 2017; and at the Milwaukee Facility on February 24, 2017, and May 4, 2017.

13

72.     On May 4, 2017, EPA representatives conducted inspections and sampling at the Milwaukee, St. Francis, and Oak Creek Facilities ("May 4, 2017 Inspection"), pursuant to *ex parte* administrative warrants for entry, inspection and sampling.

73.     EPA identified a number of RCRA violations based on inspectors' observations at the Facilities, results of samples taken during investigations, and information provided by Defendant.

74.     On February 14, 2018, Wisconsin Department of Natural Resources ("Wisconsin DNR") representatives conducted hazardous waste inspections and sampling at the Milwaukee, St. Francis, and Oak Creek Facilities ("February 14, 2018 Inspection").  Wisconsin DNR identified a number of RCRA violations based on inspectors' observations at the Facilities, results of samples taken during investigations, and information provided by Defendant.

75.     EPA identified a number of CAA violations at the St. Francis Facility and Oak Creek Facility based on inspectors' observations at the Facilities, subsequent review of the results of the performance tests, and information provided by the Defendant through information request records.

**The Milwaukee Facility**

*Operational Background*

76.     At the Milwaukee Facility, Defendant reconditioned large 275-gallon plastic and metal containers known as "totes."

77.     After tractor-trailers containing totes arrived at the Milwaukee Facility, Defendant unloaded the totes and identified totes that contained excess residual material by a visual and/or physical inspection and stored the totes prior to processing.

14

78.     The refurbishing process at the Milwaukee Facility involved: removal of residue through vacuuming or prewashing; cleaning with soapy water or a caustic pre-wash; and power-washing the exterior.

79.     Some totes contained excess residual material that could be poured, pumped or aspirated out of the tote.

80.     Excess residual material in the totes was "waste" within the meaning of Wis. Admin. Code § NR 661.0002(2).

81.     Totes containing excess residual material that could be poured, pumped or aspirated were not "empty" within the meaning of Wis. Admin. Code § NR 661.0007(2).

82.     On occasion, Defendant consolidated excess residual material from non-empty totes in other containers.

83.     At times relevant to this Complaint, Defendant did not make a hazardous waste determination for the combined waste generated by consolidating excess residual materials from multiple containers into one container at the Milwaukee Facility.

84.     Defendant sent totes containing combined waste off-site as "non-regulated waste."

85.     At times relevant to this Complaint, Defendant did not create and/or keep records of any waste characterization for wastes generated at the Milwaukee Facility.

86.     At all times relevant to this Complaint, Defendant did not have a license to store hazardous waste at the Milwaukee Facility.

*Inspections of the Milwaukee Facility*

87.     During the May 4, 2017 Inspection, EPA identified and took samples from totes being prepared for refurbishing that were designated as "empty" but contained excess residual material that could be poured out.

15

88.     Sampling results demonstrated that some of that excess residual material was ignitable and corrosive, and therefore hazardous waste.  Wis. Admin. Code §§ NR 661.0021-661.0022.

89.     Additional sample results of excess residual material from a container of combined residues which were vacuumed from designated "empty" totes contained ignitable hazardous waste.

90.     Sample results also demonstrated that a tote containing spent "pre-flush" contained ignitable hazardous waste.  Wis. Admin. Code §§ NR 661.0020-661.0024.

91.     During the February 14, 2018 Inspection, Wisconsin DNR took a sample from a tote that contained excess pourable residual material that was sent to Defendant by a customer.

92.     Sampling results demonstrated that the excess residual material in the tote, which was being prepared for refurbishing, was ignitable hazardous waste.

93.     Defendant engaged in the unlicensed "storage" of hazardous waste in non-empty containers at the Milwaukee Facility within the meaning of Wis. Stat. § 291.01(18) and Wis. Admin. Code § NR 660.10(112).

94.     Defendant engaged in "generation" of hazardous waste at the Milwaukee Facility within the meaning of Wis. Admin. Code § NR 660.10(50).

**The Oak Creek Facility**

*Operational Background*

95.     At the Oak Creek Facility, Defendant cleans metal drums and containers by processing the containers through a "Drum Reclamation Furnace" to remove interior waste residues, exterior paint, and any other foreign residues through incineration.

16

96.     After tractor-trailers with metal drums and containers arrive at Defendant's Oak Creek Facility, Defendant unloads the containers and identifies containers that contain excess residual material by a visual and/or physical inspection.

97.     Some containers contain excess residual material that can be poured, pumped or aspirated out of the container.

98.     Residual material in the containers is "waste" within the meaning of Wis. Admin. Code § NR 661.0002(2).

99.     Containers containing excess residual material that can be poured, pumped or aspirated are not "empty" within the meaning of Wis. Admin. Code § NR 661.0007(2).

100.     After the containers with excess residual material were identified, Defendant stored them on a covered truck dock at the Facility.

101.     As part of the refurbishing process, Defendant sometimes removes excess residual material from containers before processing them through the Drum Reclamation Furnace.

102.     The excess residual material removed from those containers awaiting processing through the Drum Reclamation Furnace is consolidated in other containers.

103.     Open head drums are taken to the furnace to burn off interior and exterior paint on the drums and any remaining residue from the original drum contents.

104.     After being processed through the furnace, containers are shot-blasted to remove any remaining material.

105.     Defendant operates three shot-blast machines at the Oak Creek Facility. Each shot-blast machine vents to a particulate matter filter.

106.     At times relevant to this Complaint, Defendant collected excess residual material during the refurbishing process in containers and then shipped those containers containing combined residual material off-site as non-hazardous waste.

17

107.    At times relevant to this Complaint, Defendant did not make a hazardous waste determination for combined wastes generated by consolidating residues from multiple containers at the Oak Creek Facility.

108.    At times relevant to this Complaint, Defendant did not create and/or keep records of any waste characterization for consolidated wastes generated at the Oak Creek Facility.

109.    At all times relevant to this Complaint, Defendant did not have a license to store hazardous waste at the Oak Creek Facility.

*CAA Permitting Background*

110.    On June 11, 2013, Wisconsin DNR issued Defendant an Air Pollution Control Operating Permit No. 241021220-P20 (2013 Title V Operating Permit) authorizing operation of the Oak Creek Facility as a Part 70 source.

111.    The Title V Operating Permit for the Oak Creek Facility includes the following conditions relevant to this Complaint:

- Condition I.A.1.a.(1): requires the Facility to limit particulate matter ("PM") emissions from the Drum Reclamation Furnace, Process P30, to 3.3 pounds per hour ("lb/hr");

- Condition I.A.3.a.(1) requires the Facility to control VOC emissions from the Drum Reclamation Furnace, Process P30, by at least 85%;

- Condition I.A.3.b.(2) requires that when the Drum Reclamation Furnace, Process P30 is operating, the Facility shall maintain the operating set point temperature of the afterburner at or above 1650° F and monitor the combustion temperature of the afterburner;

18

- Condition I.A.1.c.(3) requires that the Facility monitor and record the temperature of the primary chamber of the afterburner at the Drum Reclamation Furnace, Process P30, at least once every 15 minutes.

*Inspection and Information Request Background*

112. During the May 4, 2017 Inspection, EPA took samples of waste in containers sent to Defendant by its customers.

113. The waste in three of the sampled containers, which were designated by Defendant as non-empty and located on the "heavies" dock, was pourable and had more than one inch of residue remaining on the bottom of the container. Sampling results demonstrate that waste in these three containers was ignitable hazardous waste. Wis. Admin. Code § NR 661.0021.

114. During the May 4, 2017 Inspection, EPA identified and took samples from three containers holding consolidated waste from the refurbishing process.

115. Sampling results demonstrate that these containers held ignitable hazardous wastes. Wis. Admin. Code § NR 661.0021.

116. During the February 14, 2018 Inspection, Wisconsin DNR took samples of waste in several containers that were sent to Defendant by customers.

117. The waste in these containers were sampled and was pourable and in excess of one inch.

118. Sampling results demonstrate that the waste in these containers, which were being prepared for processing, was ignitable hazardous waste. Wis. Admin. Code § NR 661.0021.

119. Defendant engaged in the unlicensed "storage" of hazardous waste in non-empty containers at the Oak Creek Facility within the meaning of Wis. Stat. § 291.01(18) and Wis. Admin. Code § NR 660.10(112).

19

120.     Defendant engaged in "generation" of hazardous waste at the Oak Creek Facility within the meaning of Wis. Admin. Code § NR 660.10(50).

121.     On June 28, 2017, EPA issued Defendant an information request regarding the Oak Creek Facility under Section 3007 of RCRA, 42 U.S.C. § 6927.  The information request asked for, among other information, Defendant's temperature logs for the Drum Reclamation Furnace afterburner.

122.     In response to the information request, Defendant submitted afterburner temperature logs for the Drum Reclamation Furnace at the Oak Creek Facility.

123.     In some instances, the temperature logs that the Defendant provided contained blank portions where the afterburner temperature was not recorded, despite the requirement to record the temperature at least once every fifteen minutes under Condition I.A.1.c.(3) of the 2013 Title V Operating Permit.

124.     On at least 22 occasions, the temperature logs documented drum reclamation furnace temperatures dropping below 1650 degrees Fahrenheit, contrary to Condition I.A.3.b.(2) of the 2013 Title V Operating Permit, including temperatures in the range of 1040 degrees Fahrenheit to 1510 degrees Fahrenheit on multiple dates.

125.     By failing to maintain the Drum Reclamation Furnace Afterburner temperature at or above 1650 degrees Fahrenheit, the Defendant also failed to maintain combustion conditions that ensured compliance with: (i) the requirement to limit PM emissions from the Drum Reclamation Furnace to 3.3 lb/hr under Condition I.A.1.a.(1) of the 2013 Title V Permit; and (ii) the requirement to control VOC emissions from the Drum Reclamation Furnace by at least 85 percent under 2013 Title V Permit Condition I.A.3.a.(1).

**The St. Francis Facility**

*Operational Background*

20

126.     At the St. Francis Facility, Defendant refurbishes 5- to 55-gallon steel and plastic containers using a wash process.

127.     After tractor-trailers containing steel and/or plastic containers arrive at Defendant's St. Francis Facility, Defendant unloads the containers and identifies containers that contain excess residual material by a visual and/or physical inspection.

128.     Some containers contain residue that can be poured, pumped or aspirated out of the container.

129.     Residual material in the container is "waste" within the meaning of Wis. Admin. Code § NR 661.0002(2).

130.     Containers containing residue that can be poured, pumped or aspirated are not "empty" within the meaning of Wis. Admin. Code § NR 661.0007(2).

131.     After the containers with excess residual material were identified, Defendant stored them on a covered truck dock at the Facility.

132.     Defendant washes plastic drums through different wash lines that move containers on conveyers.  The interior wash system contains several stations to clean the interiors with hot water in flush, rinse, and clean cycles.  Hot water is supplied to the drum washing operations from four natural gas fired water heaters at the Facility.

133.     Defendant washes steel drums upside down using a caustic drum wash and rinse system similar to the plastic drum wash lines.

134.     At all times relevant to the Complaint, Defendant vented uncontrolled VOC emissions from the natural gas fired heaters, exterior drum wash system, and interior drum wash system through the scrubber used for emissions from the plastic drum line, Caustic Scrubber (Control C10), which exhausts at Stack S98.

135.     Defendant paints steel drums in an external paint spray booth (Auto Exterior Drum Spray Booth P32C).

136.     At all times relevant to the Complaint, Defendant vented emissions from the external paint spray booth to an overspray filter, which controls particulate emissions, and exhausts at Stack S12C.  The drums are cured in a curing oven, which exhausts uncontrolled at Stack S12B.

137.     The rinse water from the wash lines, which periodically is pH adjusted with sodium hydroxide, along with the sediment and sludge from these processes, is removed and accumulated in 55-gallon containers for disposal.

138.     At times relevant to this Complaint, Defendant did not make a hazardous waste determination for combined wastes generated by consolidating residue from multiple containers at the St. Francis Facility.

139.     At times relevant to this Complaint, Defendant did not create and/or keep records of waste characterization for wastes generated at the St. Francis Facility.

140.     At all times relevant to this Complaint, Defendant did not have a license to store hazardous waste at the St. Francis Facility.

*CAA Permitting Background*

141.     On March 9, 2015, Wisconsin DNR issued Construction Permit No. 14-RSG-142 to Defendant for the St. Francis Facility (the "Construction Permit").  The Construction Permit includes the following conditions relevant to this Complaint:

- Condition G.1.b.(3)(b): requiring building fans to vent exhaust from the overspray filter (via stack S12C) at a flow rate of 15,000 actual cubic feet per minute ("acfm") or greater when the paint booth is in operation;

- Condition ZZZ.1.b.(2) and (3): requires the permittee to determine and record the monthly total facility-wide hazardous air pollutant ("HAP") emissions for each HAP.

142. Pursuant to the Wis. Admin. Code § NR 406, Defendant is required to adhere to any conditions and limitations contained in its Construction Permit for the St. Francis Facility.

143. Under the Wisconsin SIP, applicants for operating permits must include emissions-related information, including "[t]he maximum theoretical emissions of all air contaminants from all emissions units, operations, and activities . . . " Wis. Admin. Code § NR 407.05(4)(c)(1).

144. On November 12, 2015, Defendant applied for an operating permit for the St. Francis Facility. In its application, Defendant indicated it was submitting a permit for a "Synthetic Minor, Non-Part 70 Source" operating permit.

145. Defendant calculated its actual VOC emissions for the Facility to be 43.58 tons per year and its potential to emit to be 70.48 tons per year – which would fall under the "major source" threshold requiring a Part 70 Source (Title V) permit.

146. Defendant's emissions calculations supporting its request for a "Synthetic Minor, Non-Part 70 Source" operating permit for the St. Francis Facility did not account for VOC emissions from the interior and exterior washing/soaking and rinsing process lines that exhaust through Caustic Scrubber (Control C10) at Stack S98.

147. The interior and exterior washing/soaking and rinsing processes at Defendant's St. Francis Facility are "process line[s]" as that term is defined in the Wis. Admin. Code § NR 400.02(128) and are subject to Wis. Admin. Code § NR 424.03(2)(b), which requires at least 85% control of VOC emissions from those process lines.

*Inspection and Information Request Background*

148.     During the May 4, 2017 Inspection, EPA took samples of waste in containers sent to Defendant by its customers.

149.     The waste in three of the sampled containers, which were designated by Defendant as non-empty and were located on the "heavies" dock, was pourable and had more than one inch of residue remaining on the bottom of the container.

150.     Sampling results demonstrate that the waste in all three containers was ignitable hazardous waste.  Waste in one container was also corrosive hazardous waste.  Wis. Admin. Code § NR 661.0022.

151.     During the May 4, 2017 Inspection, EPA also sampled a 55-gallon drum collecting combined waste from the wash-tank clean-out process.

152.     A label on the container indicated that it was "Non-Hazardous" waste.  Defendant did not have any record of a waste characterization for that waste.

153.     Sampling results demonstrate that the drum of combined waste from the wash-tank clean-out process contained corrosive (D002) hazardous waste.  Wis. Admin. Code § NR 661.0022.

154.     During the February 14, 2018 Inspection, Wisconsin DNR took samples of waste in containers sent to Defendant by customers.

155.     The waste in the sampled containers was pourable and in an amount of one inch or more in each container.

156.     Sampling results demonstrate that waste in the containers, which were being prepared for processing, was ignitable hazardous waste. Wis. Admin. Code § NR 661.0021.

157.     The inspection findings demonstrate that Defendant has engaged in "storage" of hazardous waste at the St. Francis Facility within the meaning of Wis. Stat. § 291.01(18) and Wis. Admin. Code § NR 660.10(112).

158.     The inspection findings demonstrate that Defendant has engaged in "generation" of hazardous waste at the St. Francis Facility within the meaning of Wis. Admin. Code § NR 660.10(50).

159.     On April 5, 2017, EPA issued Defendant an information request regarding the St. Francis Facility under Section 114 of the CAA, 42 U.S.C. § 7414. The information request required, among other things, Defendant to conduct performance testing to measure VOC emissions from washing processes exhausted through the Caustic Scrubber (Control C10) at Stack S98.

160.     On September 19, 2017, contractors for Defendant conducted performance testing at Stack S98 in response to the Section 114 Information Request.

161.     The St. Francis Facility's annual potential to emit VOCs from the washing process lines vented at Stack S98 is in excess of 150 tons per year ("tpy"), significantly above the 100 tpy threshold for a source to qualify as a Part 70 major source for purposes of Title V permitting.

162.      The St. Francis Facility was not achieving at least 85 percent control of VOC emissions from the washing process lines, as required by Wis. Admin. Code § NR 424.03(2)(b).

163.     On September 19, 2017, contractors for Defendant also conducted performance testing at Stack S12C, which receives exhaust from the overspray filter of the Auto Exterior Drum Spray Booth (Process 32C).

164.     The results of the Stack S12C performance test demonstrated that the exhaust gas flow rate only averaged about 12,000 acfm while the paint booth was operating, which was below

the 15,000 acfm minimum flow rate established by Condition G.1.b.(3)(b) of the Construction Permit for the St. Francis Facility.

**FIRST CLAIM FOR RELIEF – RCRA**
(Violation of RCRA for Unlicensed Storage of Hazardous Waste at the Milwaukee Facility)

165.        Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

166.        Defendant engaged in the storage of hazardous waste in non-empty containers at its Milwaukee Facility without a license, in violation of Wis. Stat. § 291.25.

167.        Defendant did not provide notice regarding its storage of hazardous waste at the Milwaukee Facility pursuant to Wis. Admin. Code § NR 660.07.

168.        Defendant's violations of RCRA and its implementing regulations, as set forth in this Claim, make CLCM subject to civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g).

**SECOND CLAIM FOR RELIEF – RCRA**
(Violation of RCRA for Unlicensed Storage of Hazardous Waste at the Oak Creek Facility)

169.        Plaintiff realleges and incorporates by reference in Paragraphs 1 through 164 as if fully set forth herein.

170.        Defendant has engaged in the storage of hazardous waste in non-empty containers at its Oak Creek Facility without a license, in violation of Wis. Stat. § 291.25.

171.        Defendant has not provided notice regarding its storage of hazardous waste at the Oak Creek Facility pursuant to Wis. Admin. Code § NR 660.07.

172.        Defendant's violations of RCRA and its implementing regulations, as set forth in this Claim, make CLCM subject to injunctive relief and civil penalties of up to the inflation-

adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g).

## THIRD CLAIM FOR RELIEF – RCRA
(Violation of RCRA for Unlicensed Storage of Hazardous Waste at the St. Francis Facility)

173.     Plaintiff realleges and incorporates by reference in Paragraphs 1 through 164 as if fully set forth herein.

174.     Defendant has engaged in the storage of hazardous waste in non-empty containers at its St. Francis Facility without a license, in violation of Wis. Stat. § 291.25.

175.     Defendant has not provided notice regarding its storage of hazardous waste at the St. Francis Facility pursuant to Wis. Admin. Code § NR 660.07.

176.     Defendant's violations of RCRA and its implementing regulations, as set forth in this Claim, make CLCM subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g).

## FOURTH CLAIM FOR RELIEF – RCRA
(Violation of RCRA for Failing to Make Accurate Hazardous Waste Determinations and to Maintain Records of Waste Characterizations at the Milwaukee Facility)

177.     Plaintiff realleges and incorporates by reference in Paragraphs 1 through 164 as if fully set forth herein.

178.     As a result of its handling and combination of waste removed from containers at the Milwaukee Facility, Defendant was a "generator" of hazardous waste at the Milwaukee Facility.

179.     Defendant violated Wis. Admin. Code § NR 662.011 by failing to make hazardous waste determinations for combined wastes generated at its Milwaukee Facility.

27

180.     Defendant violated Wis. Admin. Code § NR 662.040 by failing to make and/or maintain records of waste characterizations for waste generated at its Milwaukee Facility.

181.     Defendant's violations of RCRA and its implementing regulations, as set forth in this Claim, make CLCM subject to civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g).

## FIFTH CLAIM FOR RELIEF – RCRA
(Violation of RCRA for Failing to Make Accurate Hazardous Waste Determinations and to Maintain Records of Waste Characterizations at the Oak Creek Facility)

182.     Plaintiff realleges and incorporates by reference in Paragraphs 1 through 164 as if fully set forth herein.

183.     As a result of its handling and combination of waste removed from containers at the Oak Creek Facility, Defendant is a "generator" of hazardous waste at the Oak Creek Facility.

184.     Defendant has violated Wis. Admin. Code § NR 662.011 by failing to make hazardous waste determinations for combined wastes generated at its Oak Creek Facility.

185.     Defendant has violated Wis. Admin. Code § NR 662.040 by failing to make and/or maintain records of waste characterizations for waste generated at its Oak Creek Facility.

186.     Defendant's violations of RCRA and its implementing regulations, as set forth in this Claim, make CLCM subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g).

## SIXTH CLAIM FOR RELIEF – RCRA
(Violation of RCRA for Failing to Make Accurate Hazardous Waste Determinations and to Maintain Records of Waste Characterizations at the St. Francis Facility)

187.     Plaintiff realleges and incorporates by reference in Paragraphs 1 through 164 as if fully set forth herein.

188.     As a result of its handling and combination of waste removed from containers at the St. Francis Facility, Defendant is a "generator" of hazardous waste at the St. Francis Facility.

189.     Defendant has violated Wis. Admin. Code § NR 662.011 by failing to make hazardous waste determinations for wastes generated at its St. Francis Facility.

190.     Defendant has violated Wis. Admin. Code § NR 662.040 by failing to make and/or maintain records of waste characterizations for waste generated at its St. Francis Facility.

191.     Defendant's violations of RCRA and its implementing regulations, as set forth in this Claim, make CLCM subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g).

**SEVENTH CLAIM FOR RELIEF – CAA**
(Violation of Wisconsin SIP by Failing to Control VOC Emissions from the Process Lines at the St. Francis Facility)

192.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

193.     Defendant has violated Wis. Admin. Code § NR 424.03(2)(b) by failing to control VOC emissions from interior and exterior washing/soaking and rinsing process lines at the St. Francis Facility by at least 85 percent.

194.     In late 2018 and early 2019, Defendant installed and began operating a regenerative thermal oxidizer ("RTO") for the control of VOC process line emissions routed through the Caustic Scrubber (C10) at the St. Francis Facility.

195.     As of the date of this Complaint, Defendant has not performed a stack test to demonstrate that the RTO is reducing VOC emissions from interior and exterior washing/soaking and rinsing process lines at the St. Francis Facility by at least 85 percent, as required by Wis. Admin. Code § NR 424.03(2)(b).

196.     Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## EIGHTH CLAIM FOR RELIEF – CAA
(Violation of Wisconsin SIP by Failing to Disclose Maximum VOC Emissions in the Permit Application for the St. Francis Facility)

197.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

198.     Defendant has violated Wis. Admin. Code § NR 407.05(4)(c)(1) because Defendant's emissions calculations supporting its request for a "Synthetic Minor, Non-Part 70 Source" operating permit for the St. Francis Facility did not account for VOC emissions from the interior and exterior washing/soaking and rinsing process lines that exhaust through Stack S98.

199.     Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## NINTH CLAIM FOR RELIEF – CAA
(Violation of Title V/Section 503 of the CAA for Failing to Apply for and Obtain a Permit for the St. Francis Facility)

200.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

201.     Contrary to the representations made in the Defendant's application for a "Synthetic Minor, Non-Part 70 Source" operating permit, the St. Francis Facility's annual potential to emit VOCs is above the 100 tpy threshold for a source to qualify as a Part 70 major source for purposes of Title V permitting.

30

202.     Defendant failed to submit a timely, accurate, and complete Title V permit application – as required by CAA Section 503, 42 U.S.C. § 7661(b), and 40 C.F.R. § 70.5(a) – because Defendant's emissions calculations supporting its request for a "Synthetic Minor, Non-Part 70 Source" operating permit for the St. Francis Facility did not account for VOC emissions from the interior and exterior washing/soaking and rinsing process lines that exhaust through Stack S98.

203.     Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

**TENTH CLAIM FOR RELIEF – CAA**
(Violation of Title V/Section 502(a) of the CAA for Operating the St. Francis Facility, a Major Source, without Obtaining a Title V Permit)

204.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

205.     Defendant's St. Francis Facility is a Part 70 major source and requires a Title V permit.

206.     By operating the St. Francis Facility without a Title V permit, Defendant has violated Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b).

207.     Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

**ELEVENTH CLAIM FOR RELIEF – CAA**
(Violation of Wisconsin SIP and Construction Permit Conditions ZZZ.1.b.(2) and (3) by Failing to Determine and Record HAP Emissions at the St. Francis Facility)

Case 2:22-cv-01423-WED   Filed 11/30/22   Page 31 of 36   Document 1

208.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

209.     Defendant has violated Wis. Admin. Code § NR 406 and Condition ZZZ.1.b.(2) and (3) of the St. Francis Facility's CAA Construction Permit because Defendant did not determine and record the monthly total facility-wide HAP emissions for each HAP.

210.     More specifically, Defendant failed to determine and record the total facility-wide HAP emissions from the St. Francis Facility because Defendant did not determine and record the HAP emissions from the interior and exterior washing/soaking and rinsing process lines at the Facility.

211.     Defendant's violations of CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

### TWELFTH CLAIM FOR RELIEF – CAA
(Violation of Wisconsin SIP and Construction Permit Condition G.1.b.(3)(b) by Failing to Maintain the Required Exhaust Airflow Rate from the Over Spray Filter at the St. Francis Facility)

212.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

213.     Defendant has violated Wis. Admin. Code § NR 406 and Condition G.1.b.(3)(b) of the St. Francis Facility's CAA Construction Permit because Defendant failed to maintain an exhaust gas flow rate of at least 15,000 acfm from the overspray filter (via Stack S12C) when the Auto Exterior Drum Spray Booth was in operation.

214.     Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-

32

adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## THIRTEENTH CLAIM FOR RELIEF – CAA
(Violation of Condition I.A.1.c.(3) of the Oak Creek Facility 2013 Title V Operating Permit For Failing to Monitor and Record the Drum and Reclamation Furnace Temperature in the Primary Chamber of the Afterburner at Least Once Every 15 Minutes)

215.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

216.     Defendant has failed to monitor and record the Drum and Reclamation Furnace temperature in the Primary Chamber of the Afterburner at least once every fifteen minutes as required by Condition I.A.1.c.(3) of its 2013 Title V Operating Permit for the Oak Creek Facility, Wis. Admin. Code §§ NR 407.09(1)(f)1. and 407.09(4)(a)3.b, and CAA Section 502, 42 U.S.C. § 7661a.

217.     Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make Defendant subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## FOURTEENTH CLAIM FOR RELIEF – CAA
(Violation of the Oak Creek Facility's 2013 Title V Operating Permit by Failing to Maintain the Minimum Required Temperature in the Drum Reclamation Furnace Afterburner)

218.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 164 as if fully set forth herein.

219.     By failing to maintain the Drum Reclamation Furnace afterburner temperature at or above 1650 degrees Fahrenheit on multiple occasions, Defendant has violated Condition I.A.1.b.(2) of its 2013 Title V Operating Permit for the Oak Creek Facility, Wis. Admin. Code §§ NR 407.09(1)(f)1. and 407.09(4)(a)3.b, and CAA Section 502, 42 U.S.C. § 7661a.

33

220. By failing to maintain the Drum Reclamation Furnace afterburner temperature at or above 1650 degrees Fahrenheit on multiple occasions, Defendant also violated the PM and VOC control requirements in Conditions I.A.1.a.(1) and I.A.3.a.(1) of its 2013 Title V Operating Permit for the Oak Creek Facility, Wis. Admin. Code §§ NR 407.09(1)(f)1. and 407.09(4)(a)3.b, and CAA Section 502, 42 U.S.C. § 7661a.

221. Defendant's violations of the CAA and its implementing regulations, as set forth in this Claim, make CLCM subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 221 above, the United States of America requests that this Court:

1. Permanently enjoin Defendant from operating its St. Francis and Oak Creek Facilities except in accordance with the CAA, RCRA, and all applicable federal regulations and applicable federally enforceable state regulations;

2. Order Defendant to operate its St. Francis and Oak Creek Facilities in compliance with the CAA statutory and regulatory requirements set forth herein, the applicable SIP requirements, and the Title V and construction permits applicable to the Facilities;

3. Order Defendant to operate its St. Francis and Oak Creek Facilities in compliance with the RCRA statutory and regulatory requirements set forth herein;

3. Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA and RCRA claims alleged herein;

34

4. For violations asserted in the First through Sixth Claims for Relief, assess civil penalties against Defendant up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 35, per day per violation, pursuant to RCRA Section 3008(g), 42 U.S.C. § 6928(g);

5. For violations asserted in the Seventh through Fourteenth Claims for Relief, assess civil penalties against the Defendant up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 65, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b); and

6. Grant the Plaintiff such other relief as the Court may deem just and proper.


Dated this 30th day of November, 2022.        Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

s/ Bonnie Cosgrove
BONNIE COSGROVE
Trial Attorney
SAMANTHA M. RICCI
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
450 Golden Gate Ave., Ste. 07-6714
San Francisco, CA 94102
(415) 744-0130
bonnie.cosgrove@usdoj.gov

GREGORY J. HAANSTAD
United States Attorney
Eastern District of Wisconsin
MICHAEL A. CARTER
Assistant United States Attorney
United States Attorney's Office
Eastern District of Wisconsin

35

OF COUNSEL:

JEFFREY A. CAHN
Associate Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

CHRISTOPHER GRUBB
Associate Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604