IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

MILWAUKEE DIVISION

<table>
<tr><td>

UNITED STATES OF AMERICA, and

STATE OF WISCONSIN,

           Plaintiffs,

    v.

CONTAINER LIFE CYCLE
MANAGEMENT LLC,

           Defendant.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

Civil Action No. 2:22-cv-01423

</td></tr>
</table>

**CONSENT DECREE**

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ............................................................... 4

II.     APPLICABILITY .................................................................................. 5

III.    DEFINITIONS....................................................................................... 6

IV.     CIVIL PENALTY ................................................................................ 11

V.      RCRA COMPLIANCE REQUIREMENTS........................................... 13

VI.     CAA COMPLIANCE REQUIREMENTS .............................................. 14

VII.    APPROVAL OF DELIVERABLES ...................................................... 23

VIII.   PERMITS............................................................................................. 24

IX.     REPORTING REQUIREMENTS .......................................................... 30

X.      STIPULATED PENALTIES ................................................................. 33

XI.     FORCE MAJEURE .............................................................................. 44

XII.    DISPUTE RESOLUTION .................................................................... 46

XIII.   INFORMATION COLLECTION AND RETENTION ........................... 48

XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS............... 51

XV.     COSTS ................................................................................................. 53

XVI.    NOTICES............................................................................................. 54

XVII.   EFFECTIVE DATE .............................................................................. 56

XVIII.  RETENTION OF JURISDICTION ....................................................... 56

XIX.    MODIFICATION ................................................................................. 56

XX.     TERMINATION ................................................................................... 57

XXI.    PUBLIC PARTICIPATION .................................................................. 58

XXII.   SIGNATORIES/SERVICE................................................................... 58

XXIII.  INTEGRATION ................................................................................... 59

XXIV.   26 U.S.C. § 126(f)(2)(A)(ii) IDENTIFICATION................................... 59

XXV.    APPENDICES ...................................................................................... 59

XXVI.   FINAL JUDGMENT ............................................................................ 60

i

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant Container Life Cycle Management LLC ("CLCM") failed to comply with the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq., requirements at all three of its then-operating container reconditioning facilities in the Milwaukee, Wisconsin area, and further violated various provisions of the Clean Air Act ("CAA"), 42 U.S.C. § 7401, et seq., at two of its three facilities. EPA outlined these violations in Notices of Violation issued to CLCM on November 27, 2017 (the "EPA Notices of Violation").

The State of Wisconsin ("State" or "Wisconsin") has filed a Complaint in Intervention ("Complaint in Intervention") in this matter alleging that CLCM failed to comply with Wisconsin's hazardous waste laws, including Wis. Stat. ch. 291 and regulations issued pursuant to that chapter, at all three of its then-operating facilities, and further violated various provisions of Wisconsin's air management laws, including Wis. Stat. ch. 285 and regulations issued pursuant to that chapter, at two of its three container reconditioning facilities in the Milwaukee, Wisconsin area. The State outlined these violations in Notices of Violation issued by the Wisconsin Department of Natural Resources ("DNR") to CLCM on July 19, 2017, September 29, 2017, and January 22, 2019 (the "DNR Notices of Violation").

CLCM operates a steel and plastic container reconditioning business in St. Francis, Wisconsin ("St. Francis Facility") and operates a steel container reconditioning business in Oak Creek, Wisconsin ("Oak Creek Facility"). CLCM leases the real estate, buildings, improvements, and appurtenances at each of these locations. Until June 2020, CLCM operated an industrial bulk container reconditioning business in Milwaukee, Wisconsin (the "Former Milwaukee Facility"). CLCM leased the real estate, buildings, improvements, and appurtenances at this location.

1

CLCM receives used industrial containers from its customers, which it reconditions at its facilities and re-sells.

At the St. Francis Facility, CLCM cleans plastic and steel containers using a hot-water wash process. At the Oak Creek Facility, CLCM cleans metal containers by processing them through a "Drum Reclamation Furnace" to remove interior waste residues, exterior paint, and any other foreign residues by burning off material. CLCM stores used containers at the facilities before it reconditions them.

The Complaint alleges that CLCM violated RCRA by improperly storing hazardous waste at all three facilities, without first getting a storage license from the State of Wisconsin, in violation of Wisconsin's federally approved RCRA regulations. It also alleges that CLCM failed to make, or failed to make accurate, hazardous waste determinations and failed to keep records of waste determinations at the facilities. Next, it alleges that CLCM failed to properly perform and keep records of waste characterization for hazardous wastes that it generated at all three facilities. Finally, the Complaint alleges that CLCM violated the CAA in a number of ways by: failing to comply with requirements of Wisconsin's federally approved State Implementation Plan and Title V Permitting requirements at its St. Francis Facility; failing to comply with conditions of its construction permit at its St. Francis Facility; and failing to comply with the terms of its operating permit at its Oak Creek Facility.

The Complaint in Intervention alleges that CLCM violated Wis. Stat. ch. 291 by operating a hazardous waste facility without a license at all three facilities. It also alleges that CLCM failed to make, or failed to make accurate, hazardous waste determinations and failed to keep records of waste determinations at the facilities. The Complaint in Intervention further alleges that CLCM violated various provisions of Wis. Stat. ch. 285 and regulations and permits

2

issued pursuant to that chapter by: failing to comply with limits in and keep records required by its operation permit at the Oak Creek Facility; failing to comply with limits in and keep records required by its construction permit at the St. Francis Facility; failing to properly control volatile organic compound ("VOC") emissions from the St. Francis Facility; failing to obtain the proper type of construction permit for the St. Francis Facility; and emitting objectionable odors from the St. Francis Facility.

As of June 2020, CLCM no longer operates the Former Milwaukee Facility. CLCM purchased, installed, and began operating a regenerative thermal oxidizer ("RTO") at the St. Francis Facility. CLCM has further prepared and submitted construction and operating permit revision applications for the St. Francis and Oak Creek Facilities to revise the requirements applicable for VOC and hazardous air pollutant emissions at the Facilities.

CLCM does not admit any facts, interpretations of law, or liability to the United States arising out of the transactions, conditions, operations, or occurrences alleged in the Complaint or the EPA Notices of Violation.

CLCM further does not admit any facts, interpretations of law, or liability to the State arising out of the transactions, conditions, operations, or occurrences alleged in the Complaint in Intervention or the DNR Notices of Violation.

The United States, the State, and CLCM (the "Parties") have agreed to resolve the claims alleged in the Complaint, the Complaint in Intervention, the EPA Notices of Violation, and the DNR Notices of Violation on the terms and conditions set forth in this Consent Decree. Among other things, CLCM is agreeing to: (i) pay a civil penalty; (ii) implement a container management plan to address alleged violations of RCRA and Wis. Stat. ch. 291 requirements at the Facilities; (iii) operate temperature monitors at the Oak Creek Facility to ensure compliance

3

with CAA requirements; (iv) operate a RTO at the St. Francis Facility; (v) install certain equipment to capture and control VOC emissions from the St. Francis Facility; and (vi) conduct compliance testing for the emission sources at the St. Francis Facility. CLCM will also apply for preconstruction permits and revisions to the Facilities' operating air permits.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and sections 113(b) and 304 of the CAA, 42 U.S.C. § 7413(b) and 42 U.S.C. § 7604; and section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and over the Parties. This Court has supplemental jurisdiction over the state law claims asserted by the State pursuant to 28 U.S.C. § 1367. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a); section 113(b) of the CAA, 42 U.S.C. § 7413(b); and section 3008(a) of RCRA, 42 U.S.C. § 6928(a), because the violations alleged in the Complaint are alleged to have occurred in, and CLCM conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, CLCM consents to the Court's jurisdiction over this Decree and any such action and over CLCM and consents to venue in this judicial district.

4

## II.   APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon the United States and the State and upon CLCM and its successors, assigns, or other entities or persons otherwise bound by law.

3.      No transfer of ownership or operation by CLCM of the Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve CLCM of its obligation to ensure that the terms of the Decree are implemented, unless:

      a.      The transferee agrees in writing to undertake the obligations required by Sections V to VIII of this Decree and to be substituted for CLCM as a Party under the Decree and thus be bound by the terms thereof; and

      b.      The United States and the State consent to relieve CLCM of its obligations. The United States or the State may refuse to approve the substitution of the transferee if the United States or the State determine that the proposed transferee does not have the technical ability and/or financial means to comply with the applicable obligations of the Decree. Disputes between CLCM and the United States and the State under this subparagraph shall be resolved pursuant to Section XII of the Decree.

4.      At least 30 Days prior to a transfer of ownership by CLCM of a Facility, CLCM shall provide a copy of this Consent Decree to the proposed transferee of that Facility and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Department of Justice, and the State in accordance with Section XVI of this Decree. Any attempt to transfer ownership or operation of the Facilities without complying with this Paragraph constitutes a violation of this Decree.

5

5.     CLCM shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. The foregoing may be satisfied by hard copy, electronic copy, or by providing on-line access. CLCM shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, CLCM shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III.     DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the CAA or RCRA, or in regulations promulgated or authorized pursuant to the CAA or RCRA, shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

     a.     "CLCM" means Container Life Cycle Management LLC;

     b.     "Complaint" means the complaint filed by the United States in this action;

     c.     "Complaint in Intervention" means the complaint filed by the State in this action;

     d.     "Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXV);

     e.     "Container Management Plan" or "CMP" means the plan and requirements set forth in Appendix A;

6

f.    "Continuous" or "Continuously" means:

(1)    For a pollution control system: when a pollution control system is required to be used continuously pursuant to this Consent Decree, it shall be operated at all times during which an emission unit vented to it is operating, consistent with manufacturers' specifications, good engineering and maintenance practices, and good air pollution control practices for minimizing emissions for such equipment;

(2)    For a parametric monitoring system: when a parametric monitoring system is required to be operated continuously pursuant to this Consent Decree, it shall be operated at all times during which an emission unit vented to it is operating. The parametric monitoring system shall also be operated at all times consistent with manufacturers' specifications and good engineering and maintenance practices;

g.    "Date of Lodging" means the date the Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Eastern District of Wisconsin, as recorded on the Court's docket;

h.    "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

i.    "DNR" means the Wisconsin Department of Natural Resources and any of its successor departments or agencies;

7

j.      "DNR Notices of Violation" means the Notices of Violation issued to CLCM by DNR on July 19, 2017, September 29, 2017, and January 22, 2019, which are attached as Appendix B to this Consent Decree;

k.      "Drum Reclamation Furnace" means the furnace associated with the drum reclamation process at the Oak Creek Facility designated as P30;

l.      "Drum Reclamation Furnace Afterburner" means the pollution control device that uses combustion to control VOC and volatile HAP emissions associated with the Drum Reclamation Furnace at the Oak Creek Facility;

m.      "Effective Date" has the definition provided in Section XVII;

n.      "Empty" means a container that meets the definition of "Empty" under Wis. Admin. Code § NR 661.0007 [40 C.F.R. § 261.7];

o.      "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

p.      "EPA Method 204" means EPA's Reference Method 204 for Determining Capture Efficiency, codified at 40 C.F.R. Part 51 Appendix M;

q.      "EPA Notices of Violation" means the Notices of Violation issued to CLCM by EPA on November 27, 2017, which are attached as Appendix C to this Consent Decree;

r.      "Facilities" include the Oak Creek Facility, the St. Francis Facility, the Former Milwaukee Facility and any other facility owned or operated by CLCM related to its container reconditioning operations in Wisconsin;

s.      "Former Milwaukee Facility" means CLCM's former container reconditioning business located in Milwaukee, Wisconsin;

8

t.     "HAP" means Hazardous Air Pollutant as defined under section 112 of the CAA, 42 U.S.C. § 7412;

u.     "Heavy" means a container meeting the definition in Section I.A of the Container Management Plan;

v.     "Non-Empty and Heavy Container Storage Area(s)" means the area(s) identified in Section III.B of the Container Management Plan;

w.     "Non-Empty Container Inventory Log" means the log identified in Section IV.A through IV.C of the Container Management Plan;

x.     "Oak Creek Facility" means CLCM's container reconditioning business located in Oak Creek, Wisconsin;

y.     "Painting Process Line" means the painting process associated with the Steel Drum Process Line at the St. Francis Facility that includes the following: P32B (Drying Oven) and P32C (Spray Booth) and associated conveyers, as designated in Appendix D to this Consent Decree (Diagram of the Steel Drum Process Line);

z.     "Paragraph" means a portion of this Decree identified by an arabic numeral;

aa.    "Parametric Set Point(s)" means a minimum or maximum value established for a capture or control system that must be maintained;

bb.    "Parties" mean the United States, the State, and CLCM;

cc.    "Poly Drum Label Stripping Process Line" means the solvent-based stripping operation for poly drums at the St. Francis Facility designated as P44 (Poly Drum Label Stripping) in Appendix E to this Consent Decree (Diagram of the Poly Drum Process Line);

9

dd.    "Poly Drum Process Line" means the container reconditioning process line for poly or plastic containers at the St. Francis Facility that includes the following: PXX – Bung Removal (shared with Steel Drum Process Line); P11 – Bung Washer (shared with Steel Drum Process Line); P80A – Interior Caustic Preflush (shared with Steel Drum Process Line); P82/P72 – Poly Rinse Tank System or Exterior Wash Soaker; P42 – Final Internal Drum Wash; P91 – Burner for Flush System; P41 – Flamer; P06 and P07 – Poly Auto Purge;  P12/P13/P14/P15/P01/P02/P03 – Water Tanks (shared with Steel Drum Process Line). The Poly Drum Process Line is depicted in the diagram in Appendix E;

ee.    "Regenerative Thermal Oxidizer" or "RTO" means a pollution control device at the St. Francis Facility that uses thermal oxidation (combustion) to control VOC and volatile HAP emissions;

ff.     "Section" means a portion of this Decree identified by a roman numeral;

gg.    "State" means the State of Wisconsin;

hh.    "St. Francis Facility" means CLCM's container reconditioning business located in St. Francis, Wisconsin;

ii.    "Steel Drum Process Line" means the container reconditioning process line for metal containers at the St. Francis Facility that includes the following: PXX – Bung Removal (shared with Poly Drum Process Line); P11 – Bung Washer (shared with Poly Drum Process Line); P80A – Interior Caustic Preflush (shared with Poly Drum Process Line); P72 – Exterior Wash Soaker; P74 – Internal Double Split Washer; P75 – Acidizer; P04 – Used Oil Tank; P05 – Oil Treatment Tank;

10

P12/P13/P14/P15/P01/P02/P03 – Water Tanks (shared with Poly Drum Process Line).
The Steel Drum Process Line is depicted in the diagram in Appendix D;

jj.     "Synthetic Minor Source" means any stationary source that has its
potential to emit limited by permit conditions that are federally enforceable so that it is
not a major source;

kk.     "Trailer Storage Area(s)" means the area(s) identified in Section III.A of
the Container Management Plan;

ll.     "United States" means the United States of America, acting on behalf of
EPA;

mm.     "VOC Capture System" means the system at the St. Francis Facility,
including duct systems, fans, hoods, and enclosures, that captures VOC at or near its
emission points and transports the air pollutant via air to the RTO;

nn.     "VOC" or "Volatile Organic Compounds" has the definition set forth in
40 C.F.R. § 51.100(s); and,

oo.     "Year" means 365 consecutive Days.

IV.     CIVIL PENALTY

8.     Within 30 Days after the Effective Date of this Consent Decree, CLCM shall pay
the United States the sum of $800,000.00 as a civil penalty, together with interest accruing from
the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C.
§ 1961 as of the Date of Lodging.

9.     CLCM shall pay the civil penalty amount due to the United States by FedWire
Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with
written instructions provided to CLCM by the Financial Litigation Unit ("FLU") of the United

11

States Attorney's Office for the Eastern District of Wisconsin after the Effective Date. The

payment instructions provided by the FLU will include a Consolidated Debt Collection System

("CDCS") number, which CLCM shall use to identify all payments required to be made in

accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Container Life Cycle Management LLC
> c/o Linda Benfield
> Foley & Lardner, LLP
> 777 E. Wisconsin Avenue
> Milwaukee, WI 53202
> (414) 297-5825
> lbenfield@foley.com

on behalf of CLCM. CLCM may change the individual to receive payment instructions on its

behalf by providing written notice of such change to the United States and EPA in accordance

with Section XVI.

10.    At the time of payment to the United States, CLCM shall send notice that

payment has been made (a) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular

mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio

45268; (b) to the United States via email or regular mail in accordance with Section XVI; and (c)

to EPA in accordance with Section XVI. Such notice shall state that the payment is for the civil

penalty owed pursuant to the Consent Decree in *United States and State of Wisconsin v.*

*Container Life Cycle Management LLC* and shall reference the civil action number, CDCS

Number, and DOJ case number 90-7-1-11802/1.

11.    CLCM shall not deduct any penalties paid under this Decree pursuant to this

Section or Section X in calculating its federal income tax.

12.     No later than 30 Days after the Effective Date of this Consent Decree, CLCM shall pay a civil penalty of $800,000.00 to the State. CLCM shall pay the civil penalty owed to the State by check made payable to the Wisconsin Department of Justice and delivered to: Emily M. Ertel, Assistant Attorney General, Wisconsin Department of Justice, 17 West Main Street, P.O. Box 7857, Madison, Wisconsin 53707-7857.

## V.    RCRA COMPLIANCE REQUIREMENTS

13.     Within 45 Days after the Date of Lodging, CLCM shall comply with all provisions of the Container Management Plan except Sections II.D, III.A, and III.B.

14.     Within 45 Days after the Effective Date, CLCM shall complete construction and commence use of the Non-Empty and Heavy Container Storage Area(s) and additionally comply with Section III.B of the Container Management Plan.

15.     Within 270 Days after the Effective Date, CLCM shall: (a) complete construction and commence use of the Trailer Storage Area(s) and additionally comply with Sections II.D and III.A of the Container Management Plan; or (b) notify the United States and the State, in accordance with Section XVI, that it has elected not to construct the Trailer Storage Area(s).

16.     CLCM shall continue to comply with the requirements of the Container Management Plan for two (2) Years beginning 45 Days after the Effective Date.

17.     Once the two (2) Year period in Paragraph 16 ends, CLCM shall continue to make and keep the Non-Empty Container Inventory Log as required by Section IV.A. through IV.C of the Container Management Plan. CLCM shall continue to submit on a quarterly basis to EPA and the State the Non-Empty Container Inventory Log and a summary document as required by Section VI of the Container Management Plan.

13

## VI.    CAA COMPLIANCE REQUIREMENTS

**Oak Creek Facility**

18.    <u>Installation and Operation of Temperature Digital Data Recorder and Secondary Temperature Sensor at the Drum Reclamation Furnace Afterburner</u>. Within 30 Days after the Effective Date, CLCM shall install, and shall thereafter Continuously operate and maintain a new digital data recorder that records the temperature of the Drum Reclamation Furnace Afterburner. In addition, within 30 Days after the Effective Date, CLCM shall install, and shall thereafter Continuously operate and maintain a secondary temperature sensor in the Drum Reclamation Furnace Afterburner.

19.    <u>Monitoring and Recording Whether the Drum Reclamation Furnace Is or Is Not Operating</u>.  Within 30 Days after the Effective Date, CLCM shall monitor and record whether the Drum Reclamation Furnace is operating by installing, and thereafter Continuously operating, a mechanical or optical switch to monitor and record the entry of drums during operation of the furnace. For purposes of this Section, the Drum Reclamation Furnace shall be considered to be "operating" for fifteen minutes after the last drum has been recorded by the mechanical or optical switch entering the Drum Reclamation Furnace.

20.    <u>Operation of the Drum Reclamation Furnace Afterburner</u>. Beginning on the Effective Date, and at all times thereafter when the Drum Reclamation Furnace is operating, except during compliance testing under Paragraph 22, CLCM shall Continuously maintain a minimum Parametric Set Point temperature in the Drum Reclamation Furnace Afterburner chamber, expressed as a one-hour block average of four equally spaced readings taken once every 15 minutes. Prior to compliance testing conducted pursuant to Paragraph 22 that demonstrates compliance, CLCM shall maintain a Parametric Set Point temperature at or above

14

1650 degrees Fahrenheit in the Drum Reclamation Furnace Afterburner chamber. After completing a compliance test conducted pursuant to Paragraph 22 that demonstrates compliance, the minimum Parametric Set Point shall be the average Drum Reclamation Furnace Afterburner chamber temperature recorded during the test.

21.     <u>Emission Limits</u>. Beginning on the Effective Date, CLCM shall at all times limit particulate matter emissions from the Drum Reclamation Furnace to 3.3 pounds per hour, as demonstrated by compliance testing requirements in Paragraph 22. In addition, CLCM shall at all times control VOC emissions from the Drum Reclamation Furnace by at least 85 percent on a one-hour block average, determined by compliance with the Parametric Set Point temperature established pursuant to Paragraph 20, the compliance testing requirements in Paragraph 22, and compliance with the parametric monitoring and recordkeeping requirements in Paragraphs 18 and 20.

22.     <u>Compliance Testing</u>. Within 90 Days after the Effective Date, and every 60 months thereafter, CLCM shall conduct a compliance performance test for PM, PM10, visible emissions, and VOC to demonstrate compliance with all emission limits applicable to the Drum Reclamation Furnace. Each test shall be performed within 90 Days of the anniversary date of the initial compliance test. CLCM shall follow the procedures for compliance emission testing found in the Oak Creek Facility's CAA operation permit. During the duration of this Decree, CLCM shall notify EPA prior to any compliance test and provide copies of the compliance emission test report in the same way that CLCM is required to notify and report to DNR under the operation permit.

23.     <u>Monitoring and Recording Afterburner Temperature</u>. Commencing no later than 30 Days after the Effective Date, CLCM shall Continuously monitor and record the combustion

temperature of the Drum Reclamation Furnace Afterburner with data collected at four equally spaced readings taken once every 15 minutes expressed as a one-hour block average.

**St. Francis Facility**

24.     Control of VOC Emissions from Process Lines and Other Emission Units.

a.     Commencing no later than 180 Days after the Effective Date, CLCM shall Continuously operate each of the Steel Drum Process Line and Poly Drum Process Line so that VOC emissions from each process line are Continuously controlled by 85 percent as required by Wis. Admin. Code § NR 424.03(2).

b.     Beginning on the Effective Date, CLCM shall not use VOC-containing solvents at P71 (Steel Drum De-Labeling) and P45 (Poly Drum Wipe Cleaning).

c.     Beginning on the Effective Date, CLCM shall limit emissions from the Poly Drum Label Stripping Process Line to 146 pounds of VOC per month on a 12-month rolling average.

d.     Within 30 Days after DNR issues the construction permit referred to in Paragraph 39, CLCM shall decommission and within a reasonable time remove the following equipment from the St. Francis Facility: P80B (Poly Drum Exterior Wash/Soaker), P80C (Poly Drum Exterior Rinse), and P95 (Poly Drum Caustic Pre-Flush).

25.     Operation of the Regenerative Thermal Oxidizer.

a.     Beginning on the Effective Date, CLCM shall Continuously operate the RTO to achieve a VOC destruction efficiency of at least 98 percent by weight or an outlet process concentration of less than or equal to 20 ppmv VOC.

16

b.      Beginning on the Effective Date, CLCM shall Continuously operate the RTO in accordance with the following Parametric Set Points:

(1)      From the Effective Date until the date on which CLCM submits a report pursuant to Paragraph 28.g demonstrating compliance with Paragraph 24.a, CLCM shall maintain the 3-hour block average temperature of the RTO combustion chamber at no less than 1650 degrees Fahrenheit, expressed as a three-hour block average of 12 equally spaced readings taken once every 15 minutes.

(2)      After CLCM submits a report pursuant to Paragraph 28.g demonstrating compliance with Paragraph 24.a, CLCM shall at all times thereafter, except during performance testing, maintain the 3-hour block average temperature of the RTO combustion chamber at no less than the minimum temperature determined from the most recent performance test that demonstrates compliance with the limit in Paragraph 25.a.

c.      Beginning on the Effective Date, CLCM shall interlock the RTO with the Steel Drum Process Line, Poly Drum Process Line, and Painting Process Line such that these process lines cannot operate unless the RTO is operating.

26.      Installation of Improvements to the VOC Capture System.

a.      <u>Interior Drum Wash (P80A) Improvements</u>. Within 180 Days after the Effective Date, CLCM shall construct a partial enclosure, enhancing the capture system at P80A, and shall thereafter Continuously operate that capture system. The enhancements to the capture system shall consist of the installation of solid poly cover plates to cover the spaces between the drums and the drain slot at the feed end of the

17

lines, in order to partially enclose the trough through which flush water and displaced vapors are collected and reduce the open area. CLCM shall vent the captured emissions to the RTO. CLCM shall construct the capture system in accordance with the detailed design included as Appendix F (P80A Design).

      b.      <u>Bung Removal Area (PXX) Improvements</u>. Within 180 Days after the Effective Date, CLCM shall install a capture system at PXX and shall thereafter Continuously operate that capture system. The capture system shall consist of a side draft hood with side curtains at each of the two bung removal areas and a canopy hood with side curtains at each of the two staging areas that capture emissions during the initial removal of the bungs and during staging on the line after the bungs are removed. CLCM shall vent the captured emissions to the RTO. CLCM shall construct the capture system in accordance with the detailed design included as Appendix G (PXX Design).

27.      Operation of VOC Capture System.

      a.      Within 180 Days after DNR issues the construction permit referred to in Paragraph 39, CLCM shall Continuously vent all captured emissions from the Steel Drum Process Line and the Poly Drum Process Line to the RTO.

      b.      Notwithstanding the requirement in Paragraph 27.a, CLCM is not required to vent P12/P13/P14/P15/P01/P02/P03 (water tanks) to the RTO when the Steel Drum Process Line and Poly Drum Process Line are not in operation.

      c.      Commencing no later than the date on which CLCM submits the report pursuant to Paragraph 28.g, CLCM shall Continuously maintain the flow rate Parametric Set Point at the RTO inlet at no less than the flow rate determined from the most recent performance test demonstrating compliance with the limit in Paragraph 24.a.

18

d.	Commencing no later than the date on which CLCM submits the report pursuant to Paragraph 28.g, CLCM shall Continuously operate the VOC Capture System with a duct static pressure Parametric Set Point at no less than the minimum duct static pressure established during the most recent performance test demonstrating compliance with the limit in Paragraph 24.a, expressed as a three-hour block average of 12 equally spaced readings taken once every 15 minutes.

28.	Performance Testing and Compliance Demonstration for the RTO and VOC Capture System.

a.	Within 120 Days after DNR issues the construction permit referred to in Paragraph 39 but no sooner than 240 Days after the Effective Date, CLCM shall submit to EPA and the State for review and approval a protocol for performance testing. CLCM shall prepare the protocol in accordance with Appendix H (Summary of Requirements for Performance Test Protocol and Performance Test Report).

b.	After review of the protocol for performance testing submitted pursuant to Paragraph 28.a, EPA and the State shall in writing: (1) approve the submission; (2) approve the submission upon specified conditions; or (3) request that CLCM modify the submission and resubmit for approval.

c.	When the protocol for performance testing is approved pursuant to Paragraph 28.b, CLCM shall take all actions required by the protocol, in accordance with the schedules and requirements of the protocol, as approved and subject only to CLCM's right to dispute the modified provisions under Section XII of this Decree.

d.	Unless otherwise directed by EPA and the State, CLCM shall not conduct performance testing prior to approval of the protocol for performance testing.

19

Notwithstanding the above, CLCM may conduct an engineering evaluation of the ductwork and sampling points in the St. Francis Facility in order to identify sampling locations and determine compliance with methods included in the protocol.

   e.  CLCM shall not conduct performance testing until CLCM has reconfigured the equipment at the St. Francis Facility to conform with the Steel Drum Process Line and Poly Drum Process Line as defined in this Consent Decree, and has completed the improvements required in Paragraph 26. CLCM shall conduct the proposed testing within 60 Days of EPA and the State's approval of the proposed testing.

   f.  At least 20 Days prior to the planned performance test(s) under this Paragraph, CLCM shall submit notification of the intent to perform performance testing to EPA and the State.

   g.  Within 60 Days after completing performance testing, CLCM shall submit a report to EPA and the State, which shall include the items detailed in the approved protocol, as well as a demonstration of compliance with the requirements of Paragraphs 24.a (following the methodology in Appendix I (Methodology for Calculating Compliance with 85% VOC Capture & Control Requirements)) and 25.a.

   h.  If EPA and the State determine that the report required by Paragraph 28.g shows that the performance test failed to demonstrate compliance with the requirements in the approved testing protocol or requirements of Paragraph 24.a, then CLCM shall submit a corrective action plan specifying all the projects necessary to achieve compliance and provide detailed design information to EPA and the State within 60 Days after receiving notice from EPA and the State of such failure. CLCM shall implement all

20

projects within 60 Days after approval pursuant to Section VII by EPA and the State of CLCM's corrective action plan.

i.      Within 30 Days after completing all projects identified in the corrective action plan, CLCM shall submit to EPA and the State for review and approval a protocol for performance testing consistent with Appendix H and repeat the requirements in Paragraphs 28.b through 28.g that are applicable to the corrective action plan.

j.      If CLCM modifies the VOC Capture System after completing testing as required by this Paragraph that demonstrates compliance with the requirements in Paragraph 24.a, CLCM shall conduct testing consistent with Appendix H to demonstrate the VOC Capture System, as modified, is no less effective than the VOC Capture System prior to modification.

k.      After CLCM completes the performance testing described in this Paragraph, CLCM shall conduct destruction efficiency testing of the RTO every two Years (biennially) thereafter. Each biennial test shall be performed within 90 Days of the anniversary date of the initial performance test or within 90 Days of an alternate date as specified by DNR. DNR may grant a written waiver of a biennial test if the most recently completed biennial test is no older than two Years plus 90 Days prior and demonstrated that the VOC destruction efficiency of the RTO was at least 99.0 percent by weight. Any request for a waiver from the biennial testing requirement shall be submitted in writing for DNR review and approval at least 60 Days prior to the required test date.

29.     HAP and VOC Compliance Demonstration.

a.      Commencing on the Effective Date, CLCM shall limit the St. Francis Facility's VOC and HAP emissions to less than:

21

(1)     100 tons per year (tpy) for VOC emissions; and

(2)     10 tpy for emissions of any single HAP, and 25 tpy for combined emissions of HAPs.

b.     Within one month after CLCM submits the test report required by Paragraph 28.g and monthly thereafter, CLCM shall calculate monthly emissions and conduct a rolling 12-month analysis to demonstrate that the St. Francis Facility is a Synthetic Minor Source for VOC and HAP emissions by following the calculation protocol in Appendix J (VOC and HAP Synthetic Minor Source Determination).

30.     Monitoring.

a.     RTO Monitoring Requirements.  By the Effective Date, CLCM shall install, and shall thereafter Continuously operate and maintain an electronic parametric monitoring system to measure and record: (1) the temperature of the combustion chamber of the RTO with data collected in each successive 15-minute period reduced to a 3-hour block average; and (2) the volumetric flow rate at the inlet to the RTO with data collected in each successive 15-minute period reduced to a 3-hour block average.

b.     Capture System Monitoring Requirements. By the date of the initial performance testing required by Paragraph 28, CLCM shall install, and shall thereafter Continuously operate and maintain an electronic parametric monitoring system to measure and record static pressure, with data collected in each successive 15-minute period reduced to a 3-hour block average at: the P80A inlet header; combined static pressure at the inlet for P12, P13, P14, P15, P01, P02, and P03 (steel process line water tanks) and P82; combined static pressure at the inlet combining PXX, P11, P80A, P72,

22

P74; combined static pressure at the inlet combining P75, P04/P05, P42, P41, P06, P07; and combined static pressure at the inlet combining P42, P41, P06, P07.

VII.    <u>APPROVAL OF DELIVERABLES</u>

31.    Section VII of this Consent Decree applies to all deliverables required by this Consent Decree except for those required by Section VI of the Container Management Plan, Paragraphs 22, 28.a through 28.g, and 28.i through 28.k, and Section IX of this Decree.

32.    After review of any plan, report, or other item that is required to be submitted and approved pursuant to this Consent Decree, EPA and the State shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

33.    If the submission is approved pursuant to Paragraph 32(a), CLCM shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 32(b) or 32(c), CLCM shall, upon written direction from EPA and the State take all actions required by the approved plan, report, or other item that EPA and the State determine are technically severable from any disapproved portions, subject to CLCM's right to dispute only the specified conditions or the disapproved portions under Section XII of this Decree.

34.    If the submission is disapproved in part or in whole pursuant to Paragraphs 32(c) or 32(d), CLCM shall, within 45 Days after the disapproval, or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the

23

resubmission is approved in whole or in part, CLCM shall proceed in accordance with the preceding Paragraph.

35. Any stipulated penalties applicable to the original submission, as provided in Section X of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of CLCM's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

36. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA and the State may again require CLCM to correct any deficiencies, in accordance with the preceding Paragraphs, or may themselves correct any deficiencies, subject to CLCM's right to invoke Dispute Resolution and the right of EPA and the State to seek stipulated penalties as provided in the preceding Paragraphs.

VIII.    PERMITS

37. Where any compliance obligation under this Section requires CLCM to obtain a federal, state, or local permit or approval, CLCM shall submit timely applications and take all other actions reasonably necessary to obtain all such permits or approvals. CLCM may seek relief under the provisions of Section XI of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if CLCM has submitted timely applications and has taken all other actions reasonably necessary to obtain all such permits or approvals.

38. Prevention of Significant Deterioration Permit Not Required. Nothing in this Consent Decree shall be construed to require CLCM to apply for or obtain a Prevention of

24

Significant Deterioration permit for any physical change in or change in the method of operation of equipment at the St. Francis Facility that gave rise to claims resolved by Section XIV of this Consent Decree.

39. <u>St. Francis Facility Initial Construction Permit</u>. Within 90 Days after the Date of Lodging, CLCM shall submit an application for a construction permit or other federally enforceable Title I permit to the permitting program of DNR for the St. Francis Facility. The application shall request to reconfigure the equipment at the facility to be consistent with the definitions of the Steel Drum Process Line and Poly Drum Process Line and requirements in this Consent Decree. For emission calculations included in the application, CLCM shall use emission factors based on the sampling program conducted at the St. Francis Facility in September 2017 pursuant to EPA's CAA section 114 information request.

40. <u>St. Francis Facility Permits to Ensure Survival of Consent Decree Requirements after Termination of Consent Decree</u>. Before CLCM may seek to terminate this Consent Decree, it must submit applications for the St. Francis Facility to the construction permits and operation permits permitting programs of DNR, and those applications shall be determined to be complete by DNR or complete by operation of State statute. CLCM shall request incorporation of the following requirements into a federally enforceable Title I permit and a non-Title V operation permit such that the following requirements survive the termination of this Consent Decree:

a. The requirements in Paragraph 24.a to operate the Steel Drum Process Line and Poly Drum Process Line to control VOC emissions;

b. The requirement in Paragraph 24.b to not use VOC-containing solvents at P71 and P45;

25

c.      The requirement in Paragraph 24.c to limit emissions from the Poly Drum Label Stripping Process Line to 146 pounds of VOC per month on a 12-month rolling average;

d.      The requirement in Paragraph 24.d to decommission and remove P80B, P80C, and P95;

e.      The requirement in Paragraph 25.a to operate the RTO to achieve a VOC destruction efficiency of 98 percent or outlet process concentration of less than or equal to 20 ppmv VOC;

f.      The requirement in Paragraph 25.b.(2);

g.      The requirement in Paragraph 25.c to interlock the RTO with the Steel Drum Process Line, Poly Drum Process Line, and Painting Process Line such that these process lines cannot operate unless the RTO is operating;

h.      The requirements in Paragraphs 27.a through 27.d for the operation of the VOC Capture System;

i.      The requirement in Paragraph 28.j to conduct compliance testing consistent with Appendix H of the VOC Capture System if modifications to the VOC Capture System occur;

j.      The requirement in Paragraph 28.k to conduct destruction efficiency testing consistent with Appendix H on the RTO every two years;

k.      The requirement in Paragraph 29.a to limit the St. Francis Facility's VOC and HAP emissions to less than 100 tpy VOC emissions and 10 tpy of any single HAP and 25 tpy for combined emissions of HAPs;

26

l.      The requirement in Paragraph 29.b to conduct a rolling 12-month analysis to demonstrate that the St. Francis Facility is a minor source for VOC and HAP emissions by following the protocol in Appendix J;

m.      The requirement in Paragraph 30.a to monitor and record: (1) the temperature of the combustion chamber of the RTO with data collected in each successive 15-minute period reduced to a 3-hour block average; and (2) the volumetric flow rate at the inlet to the RTO with data collected in each successive 15-minute period reduced to a 3-hour block average; and

n.      The requirement in Paragraph 30.b to measure and record static pressure, with data collected in each successive 15-minute period reduced to a 3-hour block average at: the P80A inlet header; combined static pressure at the inlet for P12, P13, P14, P15, P01, P02, and P03 (steel process line water tanks) and P82; combined static pressure at the inlet combining PXX, P11, P80A, P72, P74; combined static pressure at the inlet combining P75, P04/P05, P42, P41, P06, P07; and combined static pressure at the inlet combining P42, P41, P06, P07.

41.     Oak Creek Permits to Ensure Survival of Consent Decree Requirements after Termination of Consent Decree. Within 90 Days of the Effective Date, CLCM must submit applications for the Oak Creek Facility to the construction permits and operation permits permitting programs of DNR. Before CLCM may seek to terminate this Consent Decree pursuant to Section XX, those applications shall be determined to be complete by DNR or complete by operation of State statute. CLCM shall request incorporation of the following requirements into federally enforceable Title I and Title V permits such that the following requirements become "applicable requirements" as that term is defined in 40 C.F.R. § 70.2, are incorporated into a

27

federally enforceable Title V permit for the Oak Creek Facility, and survive the termination of this Consent Decree:

a.      The requirement in Paragraph 18 to operate and maintain a digital data recorder for recording the temperature of the Drum Reclamation Furnace Afterburner;

b.      The requirement in Paragraph 18 to operate a secondary temperature sensor in the Drum Reclamation Furnace Afterburner;

c.      The requirement in Paragraph 19 to monitor and record whether the Drum Reclamation Furnace is operating by installing and thereafter Continuously operating a mechanical or optical switch to monitor and record the entry of drums during operation of the Drum Reclamation Furnace. The Drum Reclamation Furnace shall be considered to be "operating" for fifteen minutes after the last drum has been recorded by the mechanical or optical switch entering the Drum Reclamation Furnace;

d.      The requirement in Paragraph 20 to maintain, on a one-hour average, the specified Parametric Set Point temperature established pursuant to Paragraph 20 in the Drum Reclamation Furnace Afterburner chamber while the Drum Reclamation Furnace is operating;

e.      The requirement in Paragraph 21 to limit particulate matter emissions from the Drum Reclamation Furnace to 3.3 pounds per hour and to control VOC emissions from the Drum Reclamation Furnace by at least 85 percent;

f.      The requirement in Paragraph 22 to perform subsequent performance tests of the Drum Reclamation Furnace at a frequency of once every five years to reestablish the minimum Parametric Set Point temperature of the Drum Reclamation Furnace Afterburner; and

28

g.	The requirement in Paragraph 23 to monitor and record the combustion temperature of the Drum Reclamation Furnace Afterburner with data collected in a one-hour block average.

42.	Following submission of a permit application, CLCM shall cooperate with the State by promptly submitting all information that the State seeks following its receipt of the permit application.

43.	Requirements incorporated into non-Title V and Title V operating permits pursuant to Paragraphs 40 and 41, respectively, shall survive termination of this Consent Decree.

44.	For any permit applications required by this Section that are filed after the Effective Date of this Consent Decree, CLCM shall submit to EPA and the State, in the manner set forth in Section XVI, a copy of each application, as well as a copy of any permit proposed as a result of such application, to allow for timely participation in any public comment process. If, as of the Effective Date, CLCM has already received any permit necessary to implement the requirements of this Consent Decree, then no later than 30 Days after the Effective Date, CLCM shall submit copies of such permits to EPA and the State in the manner set forth in Section XVI.

45.	Prohibition on Use of Emission Reductions, Credits or Offsets. Emission reductions that result from actions to be taken by CLCM to comply with the requirements of this Consent Decree shall not be used in any way to determine whether or not a project would result in either a "significant emissions increase" or a "significant net emissions increase" under the Nonattainment NSR and PSD programs. Emission reductions that result from actions to be taken by CLCM to comply with the requirements of this Consent Decree shall not be considered as a creditable contemporaneous emission decrease for the purpose of obtaining a netting credit or offset under the CAA's Nonattainment NSR and PSD programs.

29

46.     Nothing in this Consent Decree is intended to preclude the emission reductions generated under this Consent Decree from being considered by the applicable state regulatory agency or EPA for the purpose of attainment demonstrations submitted pursuant to section 110 of the CAA, 42 U.S.C. § 7410, or in determining impacts on National Ambient Air Quality Standards, PSD increment, or air quality related values, including visibility, in a Class I area.

IX.     REPORTING REQUIREMENTS

47.     CLCM shall electronically submit semi-annual reports as provided by this Paragraph:

a.      Schedule for Submission of Semi-Annual Reports. After the Date of Lodging until termination of this Decree pursuant to Section XX, CLCM shall submit semi-annual reports. The initial semi-annual report shall be due on either: (1) March 1 of the year after the Date of Lodging, if the Date of Lodging is between July 1 and December 31 of the preceding year; or (2) September 1 of the year of the Date of Lodging, if the Date of Lodging is between January 1 and June 30. The initial report shall cover the period between the Date of Lodging and the end of the applicable reporting period (e.g., if the Date of Lodging is September 15, the report shall be due on March 1 and cover the period between September 15 and December 31).

b.      Report Contents. Each report shall identify and address: the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; and reports to state agencies. In addition, each report shall also identify and address:

30

(1)     With respect to compliance with the Container Management Plan as required by Paragraphs 13 through 16: (a) status on the installation and operation of the Trailer Storage Area(s) and Non-Empty and Heavy Container Storage Area(s) at the Facilities, and (b) RCRA training for employees at the Facilities.

(2)     With respect to the Oak Creek Facility: (a) status on the installation and operation of the digital data recorder and secondary temperature sensor required by Paragraph 18; (b) any deviations from the RTO temperature Parametric Set Point established pursuant to Paragraph 20; (c) percentage of the time the digital data recorder, required by Paragraph 18, is not operating as a percentage of the Drum Reclamation Furnace operating time (monitoring downtime); (d) percentage of time the mechanical or optical switch at the Drum Reclamation Furnace, required by Paragraph 19, is not operating as a percentage of the Drum Reclamation Furnace operating time; (e) status of performance testing required by Paragraph 22, including copies of full stack test reports; and (f) any performance testing reports.

(3)     With respect to the St. Francis Facility: (a) status on the installation and operation of the improvements to the VOC capture system required by Paragraphs 26 and 27; (b) status on the installation and operation of monitoring and recordkeeping systems required by Paragraph 30; (c) calculations performed consistent with Appendix J; (d) any deviations from the RTO Parametric Set Points established pursuant to Paragraph 25.b; (e) and any deviations from the requirement to operate the VOC Capture System with the duct static pressure

31

established pursuant to Paragraph 27.d; (f) monitoring downtime; (g) status of any permit applications required by this Consent Decree, including copies of any submitted permit applications, state-proposed permits, and issued permits; and (h) any performance testing reports.

Each report shall also include a description of any noncompliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

48.     If CLCM violates, or has reason to believe that it may violate, any requirement of this Consent Decree, CLCM shall notify the United States and the State of such violation and its likely duration, in writing, within ten business days of the Day CLCM first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, CLCM shall so state in the report. CLCM shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day CLCM becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves CLCM of its obligation to provide the notice required by Section XI of this Consent Decree.

49.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting CLCM's performance under this Decree, or the performance of its Facilities, may pose an immediate threat to the public health or welfare or the environment, CLCM shall notify EPA and DNR orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after CLCM first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

32

50.    All reports shall be submitted to the United States and the State as designated in Section XVI of this Consent Decree.

51.    Each report submitted by CLCM under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

52.    The reporting requirements of this Consent Decree do not relieve CLCM of any reporting obligations required by the CAA, RCRA, or their implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

53.    Any information provided pursuant to this Consent Decree may be used by the United States and the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.    STIPULATED PENALTIES

54.    CLCM shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section XI. A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable

33

requirements of this Decree and within the specified time schedules established by or approved under this Decree.

55.  Late Payment of Civil Penalty. If CLCM fails to pay the civil penalty required to be paid under Paragraph 8 or Paragraph 12 of this Decree when due, CLCM shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

56.  Compliance Milestones.

a.  Trailer Storage Area(s) or Non-Empty and Heavy Container Storage Area(s). The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to timely construct the Trailer Storage Area(s) or Non-Empty and Heavy Container Storage Area(s) and/or failure to construct the Trailer Storage Area(s) or Non-Empty and Heavy Container Storage Area(s) in compliance with Sections III.A.2, III.A.3., III.B.2, or III.B.3 of the Container Management Plan and this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

b.  Container Management Plan Compliance. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements set forth in Sections II, III, and V of the Container Management Plan, except for Sections III.A.2, III.A.3, III.B.2, and III.B.3, which are addressed by Paragraph 56.a:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

Until 270 Days after the Effective Date, the parties agree that the stipulated penalty for violations of Section II.C of the Container Management Plan that relate to the storage of trailers at the Facility before CLCM has completed construction of the Trailer Storage Area shall be a total penalty of $100 for each Day that trailers are not unloaded after the Date of Receipt of the Trailer. After 270 Days after the Effective Date, the penalties set forth above shall apply.

      c.    Container Management Plan Recordkeeping and Reporting. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements to make and keep records and to prepare and submit reports as required in Sections IV and VI of the Container Management Plan, including those requirements that continue after the initial two (2) Year period of the Container Management Plan pursuant to Paragraph 17:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $250 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $1,000 | 31st Day and beyond |

      d.    Oak Creek Facility – Digital Data Recorder and Secondary Temperature Sensor Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to install and Continuously operate and maintain a digital data recorder that records the temperature of the Drum Reclamation

35

Furnace Afterburner and for each violation of the requirement to install and Continuously operate and maintain a secondary temperature sensor in the Drum Reclamation Furnace Afterburner, both requirements in Paragraph 18:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

    e.        Oak Creek Facility – Mechanical or Optical Switch and Monitoring Whether Drum Reclamation Furnace Is Operating. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements in Paragraph 19 to install a mechanical or optical switch and Continuously monitor and record the entry of drums during operation of the Drum Reclamation Furnace:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

    f.        Oak Creek Facility – Compliance with Parametric Set Points. The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to maintain the Parametric Set Point temperature of the Drum Reclamation Furnace Afterburner as identified in Paragraph 20:

36

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

g.    Oak Creek Facility – Emission Limits. The following stipulated penalties shall accrue per violation per Day for each violation of the emission limits identified in Paragraph 21:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

h.    Oak Creek Facility – Compliance Testing. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements to conduct compliance testing identified in Paragraph 22:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

i.    Oak Creek Facility – Monitoring and Recordkeeping Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the monitoring and recordkeeping requirements identified in Paragraph 23:

37

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

j.      St. Francis Facility – Control of VOC Emissions from Process Lines and Other Emission Units. The following stipulated penalties shall accrue per violation per Day for each violation of the emission limits and other requirements identified in Paragraphs 24.a through 24.d:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

k.      St. Francis Facility – RTO Operation and Compliance with Parametric Set Points. The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to Continuously operate the RTO to achieve the VOC destruction efficiency identified in Paragraph 25.a, each violation of the requirement to operate in accordance with the Parametric Set Points identified in Paragraph 25.b, and each violation of the requirement to interlock the RTO with the Steel Drum Process Line, Poly Drum Process Line, and the Painting Process Line in accordance with Paragraph 25.c:

Penalty Per Violation Per Day          Period of Noncompliance

38

| | |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

l.      St. Francis Facility – VOC Capture System Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements to install and Continuously operate the improvements to the VOC Capture System identified in Paragraphs 26.a and 26.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

m.      St. Francis Facility – VOC Capture System Operation and Compliance with Parametric Set Points. The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to vent all emissions from the Steel Drum Process Line and the Poly Drum Process Line to the RTO, as identified in Paragraph 27.a, and for each violation of the requirements to operate the VOC Capture System in accordance with the Parametric Set Points, as identified in Paragraphs 27.c and 27.d:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $6,000 | 31st Day and beyond |

n.      St. Francis Facility – Monitoring and Recordkeeping Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the

39

requirement to install and Continuously operate and maintain the Parametric Monitoring Systems identified in Paragraphs 30.a and 30.b, and for each violation of the requirements to measure and record the information, as identified in Paragraphs 30.a and 30.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

o.    St. Francis Facility – Testing Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements to conduct a demonstration, submit a protocol, conduct a test, submit a report, or submit a corrective action plan, as identified in Paragraph 28:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $4,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

Provided, however, that an approval under Paragraph 28.b.(2) or request under Paragraph 28.b.(3) shall not constitute a violation for purposes of this subparagraph.

p.    St. Francis Facility – HAP and VOC Compliance Demonstration Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to limit VOC and HAP emissions by the amounts identified in Paragraph 29.a, and for each violation of the requirement to conduct the

40

monthly analysis to demonstrate that the St. Francis Facility is a Synthetic Minor Source for VOC and HAP emissions, as identified in Paragraph 29.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

q.    St. Francis Facility and Oak Creek Facility – Permit Applications. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements to submit the permit applications, as identified in Paragraphs 39, 40, and 41:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $4,000 | 31st Day and beyond |

r.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section IX of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $1,000 | 31st Day and beyond |

57.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

41

to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

58.     CLCM shall pay stipulated penalties to the United States and the State within 30 Days of a written demand by either Plaintiff. Where both Plaintiffs have demanded payment of stipulated penalties, CLCM shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

59.     Either Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

60.     Stipulated penalties shall continue to accrue as provided in Paragraph 57 during any Dispute Resolution but need not be paid until the following:

      a.     If the dispute is resolved by agreement of the Parties or by a Statement of Position by the United States and the State that is not appealed to the Court, CLCM shall pay accrued penalties determined to be owing, together with interest, to the United States and/or the State within 30 Days of the effective date of the agreement or the receipt of the Statement of Position by the United States and the State.

      b.     If the dispute is appealed to the Court and the United States and/or State prevails in whole or in part, CLCM shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Paragraph 60.c below.

      c.     If any Party appeals the District Court's decision, CLCM shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

42

61.　　<u>Obligations Prior to the Effective Date</u>. Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Paragraphs 13, 39, and 47 that have occurred prior to the Effective Date of the Consent Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

62.　　CLCM shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

63.　　CLCM shall pay stipulated penalties owing to the State in the manner set forth and with the confirmation notices required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

64.　　If CLCM fails to pay stipulated penalties according to the terms of this Consent Decree, CLCM shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for CLCM's failure to pay any stipulated penalties.

65.　　The payment of penalties and interest, if any, shall not alter in any way CLCM's obligation to complete the performance of the requirements of this Consent Decree.

66.　　<u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' and the State's exclusive remedy for violations of this Consent Decree, including for any

43

noncompliance with Sections V and VI. Subject to the provisions of Section XIV, the United States and the State expressly reserve the right to seek any other relief they deem appropriate for CLCM's violation of this Decree or applicable law, including but not limited to an action against CLCM for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XI.    FORCE MAJEURE

67.    "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of CLCM, any entity controlled by CLCM, or CLCM's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite CLCM's best efforts to fulfill the obligation. The requirement that CLCM exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include CLCM's financial inability to perform any obligation under this Consent Decree.

68.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, CLCM shall provide notice orally or by electronic mail message to the United States and the State within five Days of when CLCM first knew that the event might cause a delay. Within ten Days of providing notice to the United States and the State, CLCM shall provide in writing to the United States and the State an explanation and description of the reasons for the delay; the anticipated

44

duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; CLCM's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of CLCM, such event may cause or contribute to an endangerment to public health, welfare, or the environment. CLCM shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude CLCM from asserting any claim of Force Majeure for that event for the period of time of such failure to comply and for any additional delay caused by such failure. CLCM shall be deemed to know of any circumstance of which CLCM, any entity controlled by CLCM, or CLCM's contractors knew or should have known.

69.     If the United States and the State agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by the United States and the State for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. The United States and the State will notify CLCM in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

70.     If the United States or the State does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, or do not agree with CLCM on the length of the delay, the United States or the State will notify CLCM in writing of the decision.

45

71.     If CLCM elects to invoke the dispute resolution procedures set forth in Section XII, it shall do so no later than 15 Days after receipt of the United States' or the State's notice. In any such proceeding, CLCM shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that CLCM complied with the requirements of Paragraphs 67 and 68. If CLCM carries this burden, the delay at issue shall be deemed not to be a violation by CLCM of the affected obligation of this Consent Decree identified to the United States, the State, and the Court.

## XII.    DISPUTE RESOLUTION

72.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. CLCM's failure to seek resolution of a dispute under this Section shall preclude CLCM from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of CLCM arising under this Decree. If a dispute with CLCM involves only one of the Plaintiffs, then the collective references to the United States and the State in this Section shall be construed as referring only to the Plaintiff involved in the dispute with CLCM.

73.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when CLCM sends the United States and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 60 Days from the date the dispute arises unless that period is

46

modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and the State shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, CLCM invokes formal dispute resolution procedures as set forth below.

74.     Formal Dispute Resolution. CLCM shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting CLCM's position and any supporting documentation relied upon by CLCM.

75.     The United States and the State shall serve their Statement of Position within 90 Days of receipt of CLCM's Statement of Position. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States and the State. The United States' and the State's Statement of Position shall be binding on CLCM unless CLCM files a motion for judicial review of the dispute in accordance with the following Paragraph. An administrative record of the dispute shall be maintained by the United States and the State and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Paragraph. Where appropriate, the United States and the State may allow submission of supplemental statements of position by the parties to the dispute.

76.     CLCM may seek judicial review of the dispute by filing with the Court and serving on the United States and the State a motion requesting judicial resolution of the dispute. The motion must be filed and served in accordance with Section XVI of this Consent Decree, and within 20 Days of receipt of the United States' and the State's Statement of Position

47

pursuant to the preceding Paragraph. The motion shall contain a written statement of CLCM's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

77.     The United States and the State shall respond to CLCM's motion within the time period allowed by the Local Rules of this Court. CLCM may file a reply memorandum to the extent permitted by the Local Rules.

78.     <u>Standard of Review</u>. Except as otherwise provided in this Consent Decree, CLCM shall bear the burden of demonstrating that its position complies with the requirements of this Consent Decree and that it is entitled to relief under applicable principles of law. The United States and the State reserve the right to argue that their position is, or positions are, reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

79.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of CLCM under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 60. If CLCM does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X.

## XIII.     INFORMATION COLLECTION AND RETENTION

80.     The United States and the State and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this

48

Consent Decree, at all reasonable times, upon presentation of credentials, and in compliance with all CLCM safety protocols to:

      a.      Monitor the progress of activities required under this Consent Decree;

      b.      Verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

      c.      Obtain samples and, upon request, splits of any samples taken by CLCM or its representatives, contractors, or consultants;

      d.      Obtain documentary evidence, including photographs and similar data; and

      e.      Assess CLCM's compliance with this Consent Decree.

81.      Upon request, CLCM shall provide EPA and DNR or their authorized representatives splits of any samples taken by CLCM. Upon request, EPA and DNR shall provide CLCM splits of any samples taken by EPA or DNR.

82.      Until five Years after the termination of this Consent Decree, CLCM shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to CLCM's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, CLCM shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

49

83.     At the conclusion of the information-retention period provided in the preceding Paragraph, CLCM shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, CLCM shall deliver any such documents, records, or other information to the party requesting such information. CLCM may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal or state law. If CLCM asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by CLCM. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

84.     CLCM may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that CLCM seeks to protect as CBI, CLCM shall follow the procedures set forth in 40 C.F.R. Part 2.

85.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of CLCM to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

50

## XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

86. This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint and the Complaint in Intervention filed in this action through the Date of Lodging as well as the violations alleged in the EPA Notices of Violation, the DNR Notices of Violation, and the DNR permitting letters, which are attached as Appendix K.

87. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 86. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CAA or RCRA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 86. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

88. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Facilities, CLCM shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 86.

51

89.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. CLCM is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and CLCM's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that CLCM's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, 42 U.S.C. § 7410, et seq., provisions of RCRA, 42 U.S.C. § 6901, et seq., or any other provisions of federal, state, or local laws, regulations, or permits.

90.     This Consent Decree does not limit or affect the rights of CLCM or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against CLCM, except as otherwise provided by law.

91.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

92.     <u>Pending Litigation Against DNR and Related Cases</u>. Following the Wisconsin Supreme Court's disposition of *Container Life Cycle Management LLC v. Department of Natural Resources,* Case No. 2019AP1007, CLCM and the State of Wisconsin agree to abandon all litigation in that case and associated Case No. 2019-CV-313 ("Pending Cases"). As to the Pending Cases, CLCM and the State of Wisconsin hereby waive any reliance on any opinion of the Wisconsin Supreme Court in *Container Life Cycle Management LLC v. Department of Natural Resources,* Case No. 2019AP1007, and agree to instead be bound by the terms of this

52

Consent Decree. This waiver also applies to *Container Life Cycle Management LLC v. Wisconsin Department of Natural Resources*, Case No. 2019-CV-1696 (Milwaukee County Cir. Ct.), and *Container Life Cycle Management LLC v. Wisconsin Department of Natural Resources*, Case No. 2019-CV-1733 (Milwaukee County Cir. Ct.), and is intended to preclude any argument or claim in any of the listed cases, where that argument or claim is based on or arises from the Wisconsin Supreme Court's decision and opinion in Case No. 2019AP1007. CLCM further agrees to release all claims in and agrees not to seek to reopen or alter the final judgments in *Container Life Cycle Management LLC v. Wisconsin Department of Natural Resources*, Case No. 2019-CV-1696 (Milwaukee County Cir. Ct.), and *Container Life Cycle Management LLC v. Wisconsin Department of Natural Resources*, Case No. 2019-CV-1733 (Milwaukee County Cir. Ct.).

## XV.    COSTS

93.     The United States and CLCM shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by CLCM.

94.     Within 30 Days after the Effective Date of this Consent Decree, CLCM shall pay $50,000.00 to the State for a portion of the actual attorneys' fees expended by the State, pursuant to Wis. Stat. § 291.97(3), for the investigation and prosecution of the violations under Wis. Stat. ch. 291 in this matter. Payment shall be made to Assistant Attorney General Emily M. Ertel in the manner described in Paragraph 12. The State shall also be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil

53

penalty, attorney fees specified in this Paragraph, or any stipulated penalties due but not paid by CLCM.

XVI.   <u>NOTICES</u>

95.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

**<u>As to the United States</u>**

<u>Required only where "the United States" (and not "EPA") is a recipient</u>:

<u>By email</u>:          eescdcopy.enrd@usdoj.gov
                           Re: DOJ # 90-7-1-11802/1

<u>By mail</u>:           EES Case Management Unit
                           Environment and Natural Resources Division
                           U.S. Department of Justice
                           Box 7611 Ben Franklin Station
                           Washington, D.C.  20044-7611
                           Re: DOJ # 90-7-1-11802/1

**<u>As to EPA</u>**

Required whenever either the "United States" or "EPA" is a recipient:

<u>By email</u>:          <u>For hazardous waste compliance submissions</u>
                           Brenda Whitney
                           Environmental Engineer
                           whitney.brenda@epa.gov
                           Re: Container Life Cycle Management LLC

                           <u>For air compliance submissions</u>
                           R5ardreporting@epa.gov

**<u>As to the State of Wisconsin</u>**

Required only where "the State" (and not "DNR") is a recipient:

<u>By email</u>:          ertelem@doj.state.wi.us
                           Re: Container Life Cycle Management LLC Case

54

No. 2018-00103

By mail:                       Emily Ertel
Public Protection Unit
Wisconsin Department of Justice
17 W. Main Street, PO Box 7857
Madison, WI  53707-7857
Re: Container Life Cycle Management LLC Case
No. 2018-00103

**As to DNR**

Required whenever either "the State" or "DNR" is a recipient:

By email:                  Lacey.Hillman@wisconsin.gov

By mail:                     Lacey Hillman
Environmental Enforcement Supervisor
Division of Public Safety and Resource Protection
Wisconsin Department of Natural Resources
1300 W. Clairemont Avenue
Eau Claire, WI  54701

**As to CLCM**

By mail:                     President
Container Life Cycle Management LLC
425 Winter Road
Delaware, OH 43015

With Copy to:

By email:                  lbenfield@foley.com

By mail:                     Linda Benfield
Foley & Lardner, LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306

96.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

97. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, electronically or otherwise, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.    EFFECTIVE DATE

98. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that CLCM hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVIII.    RETENTION OF JURISDICTION

99. The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII and XIX, or effectuating or enforcing compliance with the terms of this Decree.

## XIX.    MODIFICATION

100. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

101. Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII of this Decree; provided, however, that, instead of the Standard of Review provided

56

by Paragraph 78, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX. TERMINATION

102.　After CLCM has completed the requirements of Sections V, VI, VIII of this Decree, has thereafter maintained satisfactory compliance with this Consent Decree for a period of two Years, has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, and has applied for and received all air permits necessary to ensure survival of the Consent Decree limits and standards identified in Paragraphs 40 and 41 after termination of this Consent Decree, CLCM may serve upon the United States and the State a Request for Termination, stating that CLCM has satisfied those requirements, together with all necessary supporting documentation.

103.　Following receipt by the United States and the State of CLCM's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether CLCM has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States and the State agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation and agreed order terminating the Decree.

104.　If the United States and the State do not agree that the Decree may be terminated, CLCM may invoke Dispute Resolution under Section XII of this Decree. However, CLCM shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 74 of Section XII, until 90 Days after service of its Request for Termination.

57

## XXI. PUBLIC PARTICIPATION

105.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. CLCM consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified CLCM in writing that it no longer supports entry of the Decree.

## XXII. SIGNATORIES/SERVICE

106.     Each undersigned representative of CLCM, the State, and the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

107.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. CLCM agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. CLCM need not file an answer to the Complaint or the Complaint in Intervention in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXIII.    INTEGRATION

108.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV.    26 U.S.C. § 126(f)(2)(A)(ii) IDENTIFICATION

109.    For the purpose of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 126(f)(2)(A)(ii), and 26 C.F.R. § 1,162-21(b)(2)(iii)(A), performance of Paragraph 5; Section V and related Appendix A; Section VI and related Appendices H, I, and J; and Paragraphs 32, 33, 37–44, 47, 48, 50–53, 80–83 and 85 is restitution, remediation or required to come into compliance with the law.

## XXV.    APPENDICES

110.    The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the Container Management Plan.

"Appendix B" is the DNR Notices of Violation.

"Appendix C" is the EPA Notices of Violation.

"Appendix D" is the Diagram of the Steel Drum Process Line.

"Appendix E" is the Diagram of the Poly Drum Process Line.

"Appendix F" is the P80A Design.

"Appendix G" is the PXX Design.

"Appendix H" is the Summary of Requirements for Performance Test Protocol and Performance Test Report.

"Appendix I" is the Methodology for Calculating Compliance with 85% VOC Capture & Control Requirements.

"Appendix J" is the VOC and HAP Synthetic Minor Source Determination.

"Appendix K" includes permitting letters issued to CLCM by DNR.

XXVI.     <u>FINAL JUDGMENT</u>

111.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and CLCM.

Dated and entered this 27th day of July, 2023.

_____
UNITED STATES DISTRICT JUDGE
Eastern District of Wisconsin

60

We hereby consent to the entry of the Consent Decree in the matter of *United States and State of Wisconsin v. Container Life Cycle Management LLC,* subject to public notice and comment.

**FOR THE UNITED STATES**
**OF AMERICA:**

Dated this 30th day of November, 2022.

Respectfully submitted,
TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

s/ Bonnie Cosgrove
BONNIE COSGROVE
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
450 Golden Gate Ave., Ste. 07-6714
San Francisco, CA 94102
(415) 744-0130
bonnie.cosgrove@usdoj.gov

GREGORY J. HAANSTAD
United States Attorney
Eastern District of Wisconsin
MICHAEL A. CARTER
Assistant United States Attorney
United States Attorney's Office
Eastern District of Wisconsin

61

We hereby consent to the entry of the Consent Decree in the matter of *United States and State of Wisconsin v. Container Life Cycle Management LLC,* subject to public notice and comment.

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:**

*/s/ Robert A. Kaplan*

---

ROBERT A. KAPLAN
Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

*/s/ Jeffrey A. Cahn*

---

JEFFREY A. CAHN
Associate Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

/s/ *Christopher Grubb*

---

CHRISTOPHER GRUBB
Associate Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

62

We hereby consent to the entry of the Consent Decree in the matter of *United States and State of Wisconsin v. Container Life Cycle Management LLC.*

**FOR THE STATE OF WISCONSIN:**

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Emily M. Ertel

EMILY M. ERTEL
Assistant Attorney General
State Bar #1094232

SARAH C. GEERS
Assistant Attorney General
State Bar #1066948

Attorneys for Plaintiff State of Wisconsin

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0432 (Ertel)
(608) 266-3067 (Geers)
(608) 294-2907 (Fax)
ertelem@doj.state.wi.us
geerssc@doj.state.wi.us

We hereby consent to the entry of the Consent Decree in the matter of *United States and State of Wisconsin v. Container Life Cycle Management LLC.*

**FOR CONTAINER LIFE CYCLE MANAGEMENT LLC:**

GAYLORD BRENNER
President


Linda E. Benfield, Bar No. 1004937
Peter A. Tomasi, Bar No. 1038412
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306

64